

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

September 22, 1966

Honorable Joe Resweber
County Attorney
Harris County
Houston, Texas

Opinion No. C-764

Re: Whether Motor Vehicle
Retail Sales and Use
Tax is due and payable
on the transfer of vehi-
cles from a wholly-owned
subsidiary corporation to
its parent corporation.

Dear Mr. Resweber:

By letter of August 30, 1966, you request an opinion
of this office on the following question:

"Is the Motor Vehicle Retail Sales
and Use Tax due when a wholly-owned sub-
sidiary corporation transfers title to
a motor vehicle to a parent corporation,
when there is no merger and both corpo-
rations continue doing business?"

The fact statement accompanying your opinion request
states, among other information, the following:

". . . Certificates of Title to six-
teen (16) automobiles, together with the
possession of said automobiles, were trans-
ferred from Starfire Petroleum Marketing
Company, a wholly-owned subsidiary of
Signal Oil and Gas Company, to Signal Oil
Company. It further appears that the
accounting records of Starfire indicate
that $32,669.98 is owed by Signal to
Starfire for the transfer of said auto-
mobiles. The accounting records of
Signal indicate the same indebtedness.
. . ."

Article 6.01, Title 122A, Taxation-General, Vernon's
Civil Statutes, provides for the imposition of a tax upon
the transfer of automobiles as follows:

"(1) There is hereby levied a tax
upon every retail sale of every motor

-3673-

vehicle sold in this State, such tax to be equal to two per cent (2%) of the total consideration paid or to be paid for said motor vehicle.

"(2) There is hereby levied a use tax upon every motor vehicle purchased at retail sale outside this State and brought into this State for use upon the public highways by any person, firm or corporation who is a resident of this State or who is domiciled or doing business in this State. The tax imposed by this subsection shall be equal to two per cent (2%) of the total consideration paid or to be paid for said vehicle at said retail sale. The tax shall be the obligation of and be paid by the person, firm or corporation operating said motor vehicle upon the public highways of this State.

"(3) There is hereby levied a use tax in the sum of Fifteen Dollars ($15) upon any person making application for the initial certificate of title on a motor vehicle which was previously registered in his name in any other State or foreign country. It is the purpose of this subsection to impose a use tax upon motor vehicles brought into this State by new residents of this State.

"(4) There is hereby levied a tax in the sum of Five Dollars ($5) upon any transaction involving the even exchange of two (2) motor vehicles which tax shall be paid by each party to the transaction.

"(5) There is hereby levied a tax in the sum of Ten Dollars ($10) upon any person who makes a gift of a motor vehicle to another person which tax shall be paid by the donee.

"The taxes levied by or under this Chapter shall be in addition to any and all license fees and taxes levied by or under any other law of this State."

The terms "sale" and "retail sale" are defined in Article 6.03, Title 122A, Taxation-General, V.C.S. as follows:

"(A) Sale. The term 'sale' as herein used shall include installment and credit sales, and the exchange of property as well as the sale thereof for money, <u>every closed transaction constituting a sale.</u> The transaction whereby the possession of property is transferred but the seller retains title as security for the payment of the price shall be deemed a sale.

"(B) Retail Sale. The term 'retail sale' as herein used shall include all sales of motor vehicles except those whereby the purchaser acquires a motor vehicle for the exclusive purpose of resale and not for use." (Emphasis added.)

From the facts stated above, the corporations involved in the transfer of the vehicles are separate entities. <u>International Order of Twelve Knights and Daughters of Tabor v. Florida</u>, 91 S.W.2d 404 (Tex. Civ. App. 1936, no writ hist.).

The contention that sales between an affiliated company and its parent company, wherein it is claimed that such transactions are in fact not sales, have been before the courts many times. One of the most recent cases is the case of <u>Washington Sav-Mor Oil Co. v. State Tax Commission</u>, 364 P.2d 440, (Wash. Sup.Ct. 1961); the Court said:

"No authority is cited sustaining the position that the court should 'lift the corporate veil' in a case of this kind. Our research reveals that the courts which have considered the question in like cases have consistently refused to do so. These cases are all set forth in an annotation entitled 'Sale by wholly owned subsidiary to parent corporation, or vice versa, as within retail sales tax, or similar statute', appearing in 64 A.L.R.2d 769. This volume was published in 1959, and our research has revealed no subsequent cases dealing with the subject."

The writer of that annotation says:

"Since a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business,

the courts have been reluctant to disregard the separate legal entities of the parties merely to grant relief from sales, or similar, taxes at the expense of the State or its sub-division.  Thus the contention that because the wholly owned subsidiary and the parent corporation are so closely integrated, sales by the one to the other does not constitute 'sales' within the meaning of the sales tax, or similar statute has been rejected by the courts."

The Court called attention to the leading case in matters of this nature, namely, Superior Oil Co. v. Department of Finance, 36 N.E.2d 354, Sup.Ct. Illinois (1941).

The Court continued, in the Washington case,

"The appellant asks us to disregard its separate existence, not in order to prevent fraud or injustice, but in order to gain an advantage.  This we cannot do.  The legislature has not seen fit to exclude transactions between affiliated corporations, and we find in the facts of this case nothing which would justify the judicial engrafting of such an exclusion upon the statute."

We find no facts present in the situation presented that would justify excluding the sales mentioned from the clear provisions of the statute, and, therefore, answer your question in the affirmative.

## S U M M A R Y

The Motor Vehicle Retail Sales and Use Tax is due and payable on the transfer of motor vehicles from a wholly-owned

    subsidiary corporation to its parent corporation, there being no merger of such corporations and both corporations continue in business.

        Yours very truly,

        WAGGONER CARR
        Attorney General of Texas

    By
        Gordon C. Cass
        Assistant

GCC/fb:lr

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Pat Bailey
John Fainter
James McCoy
Mario Obledo

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright