[No. 35480.   Department One.   August 24, 1961.]

WASHINGTON SAV-MOR OIL CO., *Appellant*, v. THE STATE TAX COMMISSION, *Respondent.**

*Cartano, Botzer & Chapman* and *John W. Chapman,* for appellant.

*The Attorney General* and *James A. Furber, Assistant,* for respondent.

ROSELLINI, J.—This action was brought by the appellant, a Washington corporation, in the form of an appeal from an order of the Tax Commission sustaining an earlier assess-

*Reported in 364 P. (2d) 440.

ment of excise taxes against the appellant. The superior court upheld the decision of the commission, and this appeal followed.

The evidence disclosed that the assessments in question were for business and occupation taxes prescribed by RCW chapter 82.04 under the wholesaling classification. The tax was measured by the gross proceeds of appellant's sales of petroleum products to service stations and upon its sales of such products to Time Oil Company.

During the time covered by the assessments, the appellant engaged in business activities within the state of Washington and otherwise exercised its corporate franchise in this state by owning and holding real estate and buying and selling petroleum products; and during this period it reported federal income taxes and state excise taxes. The appellant was organized in 1949 as an affiliate of Time Oil Company, which, shortly after its incorporation, became the owner of its stock. The work of the corporation was done mainly by employees of Time Oil Company, and its chief function was to enable that company to conceal from its suppliers the fact that it was making certain sales and purchases. Accordingly, these sales and purchases were made in the following manner:

Time Oil Company or other suppliers would invoice the appellant, designating it as purchaser and themselves as seller, and in distributing the product the appellant would invoice itself as seller and its customers as purchasers, and these transactions were reflected on the books and records of the appellant as purchases and sales of petroleum products.

These and all other operations of the appellant were controlled by the officers and agents of Time Oil Company. The delivery of the products purchased by the appellant from Time Oil Company to the appellant's customers was made either by common carriers or unmarked trucks of Time Oil Company, which were driven by its employees. The recipients of these products, however, were invoiced and billed by the appellant; all collections were deposited

to the credit of the appellant; all employees who had contact with the appellant's customers held themselves out as employees of the appellant; and all quantity or volume rebates given the appellant's customers were made by the appellant in its own name.

In the case of products sold to Time Oil Company or to other customers, the appellant was invoiced by its suppliers as the purchaser, and the appellant paid these suppliers on the basis of such invoices. The appellant in turn sold and invoiced these products to its customers, or to Time Oil Company, designating them as purchasers and receiving from them payments which were deposited in its own separate bank account. The suppliers of products which the appellant sold to Time Oil Company were, during the period in question, unwilling to sell to the latter.

The appellant made no profit on these transactions. It is its contention that they do not come within the statutory definition of sales; that there was no transfer of property, within the meaning of that definition, since the appellant was a mere agent or department of Time Oil Company, and that in substance the purchases and sales were made by that company.

During the period covered by the assessments, Laws of 1949, chapter 228, § 2 (c), p. 817, provided:

"The word 'sale' means any transfer of the ownership of, title to, or possession of property for a valuable consideration . . ." [*cf*. RCW 82.04.040].

Laws of 1949, chapter 228, § 2 (e), p. 819, provided, *inter alia*:

"The term 'sale at wholesale' or 'wholesale sale' means any sale of tangible personal property and any sale of or charge made for labor and services rendered in respect to real or personal property, which is not a sale at retail . . ." [*cf*. RCW 82.04.060].

The appellant does not suggest that only sales involving a profit are subject to the tax. Nor does it contend that the transactions involved in this suit would not be subject to the tax if they had transpired between two unaffiliated

corporations. But it urges that the court should disregard the form and observe the substance of the transactions, which were not sales because the appellant was, in reality only a part of Time Oil Company, and one cannot make a sale to oneself.

No authority is cited sustaining the position that the court should "lift the corporate veil" in a case of this kind. Our research reveals that the courts which have considered the question in like cases have consistently refused to do so. These cases are all set forth in an annotation entitled "Sale by wholly owned subsidiary to parent corporation, or vice versa, as within retail sales tax, or similar, statute," appearing in 64 A. L. R. (2d) 769. This volume was published in 1959, and our research has revealed no subsequent cases dealing with the subject.

The writer of that annotation says:

"Since a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business, the courts have been reluctant to disregard the separate legal entities of the parties merely to grant relief from sales, or similar, taxes at the expense of the state or its subdivision. Thus, the contention that because the wholly owned subsidiary and the parent corporation are so closely integrated, sales by one to the other do not constitute 'sales' within the meaning of a sales tax, or similar, statute has been rejected by a number of courts.

"This result has been reached in a number of cases involving sales by a wholly owned subsidiary to the parent corporation, especially where the parties to the transaction have recognized their status as separate legal entities for a considerable time, enjoyed the economic advantages resulting therefrom, and in making the transactions observed the usual formalities of purchase and sale."

The leading case is *Superior Coal Co. v. Department of Finance,* 377 Ill. 282, 36 N. E. (2d) 354. There the court held that sales of coal by a subsidiary to the parent company were taxable as retail sales, where, although it appeared that the officers of the subsidiary were officers of the parent and worked for the subsidiary without additional compen-

sation, that the parent owned all the stock of the subsidiary except a few qualifying shares held by directors, that the parent dictated the price paid the subsidiary for goods sold, that substantially all income of the subsidiary was received from sales to the parent, and that the subsidiary lent its credit to the parent; it also appeared that the two corporations carefully observed their separate identity in form; that they kept separate records and had separate bank accounts; that they utilized the same forms of order, sale and shipment that buyer and seller would have used; and that they had enjoyed the advantages of separate corporate existence for over forty years.

Although recognizing that separate corporate entities are sometimes disregarded in order to prevent fraud or injustice, the court said that since the corporations in that case had utilized separate corporate forms for nearly forty years, had undoubtedly secured financial and economic advantages as a result during this period, and had consistently employed legal habiliments incident to a sale in the transactions involved, the subsidiary was not in a position to renounce its separate corporate entity and ask that its separate corporate existence be disregarded at the expense of the state. In accord are *Northwestern Pac. R. Co. v. State Board of Equalization*, 21 Cal. (2d) 524, 133 P. (2d) 400; *In re Bush Terminal Co.*, 93 F. (2d) 661 (C. C. A. 2nd, 1938); 35 Am. Bankr. (N. S.) 437; *Rexall Drug Co. v. Peterson*, 113 Cal. App. (2d) 528, 248 P. (2d) 433; and *Simmons Hardware Co. v. St. Louis* (Mo.), 192 S. W. 394.

We have in this case the controlling characteristics which persuaded the Illinois court, and other courts which have dealt with this question, that the corporate entities should not be disregarded. While the appellant has not been in existence a great many years, it has admittedly secured financial and competitive advantages during the ten years of its existence, and it has employed the legal habiliments incident to a sale in its transactions. There is a more compelling reason why those habiliments should be given effect in this instance. They were used to conceal

the identity of the true party in interest, to gain an economic advantage for the parent corporation. To disregard the corporate entity in such a case would not contribute to the prevention of fraud, but rather would amount to an encouragement of deceptive practices. No equitable principle dictates such a course of action.

As the court said in *Superior Coal Co. v. Department of Finance, supra,* ownership of the capital stock in one corporation by another does not, itself, create an identity of corporate interest between the two companies, nor does the identity of officers of the two corporations establish identity of the corporations. The corporation will be regarded as a legal entity, as a general rule, and the courts will ignore the fiction of corporate entity only with caution, and when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud.

The appellant asks us to disregard its separate existence, not in order to prevent fraud or injustice, but in order to gain an advantage. This we cannot do. The legislature has not seen fit to exclude transactions between affiliated corporations, and we find in the facts of this case nothing which would justify the judicial engrafting of such an exclusion upon the statute.

The judgment is affirmed.

WEAVER, OTT, and FOSTER, JJ., concur.

FINLEY, C. J., concurs in the result.

---

November 22, 1961. Petition for rehearing denied.