[No. 388-2.    Division Two.    March 16, 1972.]

DAVENPORT, INC., *Respondent*, v. THE DEPARTMENT OF
REVENUE, *Appellant*.

*Slade Gorton, Attorney General, Henry W. Wager* and
*Timothy R. Malone, Assistants*, for appellant.

*Douglas J. Smith, Jon G. Schneidler,* and *Cartano, Botzer & Chapman,* for respondent.

PEARSON, J.—This is a declaratory judgment action in which the taxpayer, Davenport, Inc., successfully challenged an administrative ruling of the Washington State Department of Revenue. In addition to holding the challenged administrative ruling 24 null and void, the trial court allowed the taxpayer a refund of taxes paid under protest. Both of these actions are here challenged by the Department of Revenue.

The appeal requires a construction of certain provisions of the business and occupation tax (RCW 82.04 *et seq.*) as applied to real estate brokers.

Plaintiff, Davenport, Inc., is a licensed corporate real estate broker engaged in business in Wenatchee. All of its sales personnel are associate brokers, and for the purpose of this case are stipulated to be independent contractors, rather than employees. We have set forth in the margin the unique statutory relationship which an associate broker has with the "designated broker," to whom his license is exclusively attached.[1]

---

[1]RCW 18.85.010 defines "associate broker" thus: "An 'associate real estate broker' is a person who has qualified as a 'real estate broker' who works with a designated broker and whose license states that he is associated with a designated broker; . . . "

In the normal "brokerage office" situation, the designated broker deals with the state licensing department, maintains the office, signs the contracts, and collects the commission from the seller before giving associate brokers their share.

Associate brokers may be employees or independent contractors, depending upon their contractual arrangement with the designated broker. If an independent contractor, the associate broker has a great amount of flexibility and independence in choosing his leads, employing his own sales methods, and initiating the earnest money agreement.

In short, the relationship between the designated and the associate broker (who is an independent contractor) is unique. It is not one of principal-agent, prime contractor-subcontractor, nor master-servant. Neither is the relationship strictly a partnership or joint venture. Under RCW 18.85.320, an associate broker loses his license if he ceases to be associated with a designated broker, but in every other way the

For many years, real estate brokers have been subject to the business and occupation tax to the extent of 1 per cent of the *"gross income of the business."* RCW 82.04.290. Gross income is defined as the *"value proceeding or accruing* by reason of the transaction of the business engaged in . . . "* RCW 82.04.080. The term "value proceeding or accruing" is defined in RCW 82.04.090 to mean the *"consideration . . . actually received or accrued"* by the business. (Italics ours.)

The taxpayer or person who may be taxed is defined in RCW 82.04.030:

"Person" or "company," herein used interchangeably, means any individual, receiver, administrator, executor, assignee, trustee in bankruptcy, trust, estate, firm, copartnership, joint venture, club, company, joint stock company, business trust, municipal corporation, political subdivision of the state of Washington, corporation, association, society, *or any group of individuals acting as a unit,* whether mutual, cooperative, fraternal, nonprofit, or otherwise . . .

(Italics ours.) Prior to January 1, 1969, revenue rule 128 interpreted the above statutes and applied them to real estate brokers in such a way that the original or designated broker with whom a real estate listing is made was allowed to deduct from his reported gross income "so much thereof as represents commissions paid to an associate broker . . . " The term "associate broker" was defined in the rule as a broker who assisted the original broker in effecting a sale of property listed with the latter.

In 1968, the Department of Revenue issued administrative ruling 24, which amended revenue rule 128, effective January 1, 1969. The new rule denied the original or designated broker a deduction from his gross income of amounts of commissions paid to an associate broker, whether the latter was an employee or an independent contractor.

One result of the amendment was to levy a double tax on a single commission, namely, the original broker was re-

associate brokers are separate entities, licensed for the sole purpose of selling real estate.

quired to pay the tax on the entire commission and the associate broker who was an independent contractor paid the tax on the portion of the commission which he received for his part in effecting a sale of the property. The legislature eliminated this double taxation feature in 1970.[2]

Davenport continued to deduct associate broker commissions subsequent to January 1, 1969, and in an audit on October 20, 1969, was assessed an additional tax, plus interest, of $2,557.39. The additional amount was paid under protest, and the declaratory judgment action was commenced in Thurston County on March 2, 1970.

The Department of Revenue contends on appeal that revenue rule 128 *before* the amendment was contrary to the legislative intent. It contends that the commissions paid to all associate brokers are merely an expense of doing business for the designated broker. Such commissions are, therefore, chargeable to Davenport as gross income for business and occupation tax purposes. We do not agree.

The basic legislative authority to levy a business and occupation tax is derived from RCW 82.04.220, which states in part: "There is levied and shall be collected from every *person* a tax for the act or privilege of engaging in business activities." (Italics ours.)

Only "persons" may be taxed under the statute and the definition of "persons" set forth above (RCW 82.04.030) with its wide variety of entities and groups, makes it reasonably clear that double taxation was not intended.

---

[2]In February of 1970, during the special session, the state legislature passed RCW 82.04.255. This statute provided:

[W]here the brokerage office has paid the tax as provided herein, salesmen or associate brokers within the same brokerage office shall not be required to pay a similar tax upon the same transaction.

This statute eliminated the double tax result of amended revenue rule 128, but it also denied a deduction to the designated broker, promulgated in the original revenue rule 128. As amended, revenue rule 128 is now null and void, due to legislative enactment; the issue of its validity in this case is limited to the period from January 1, 1969 when it became effective, to July 1, 1970, when RCW 82.04.255 became law.

The real estate brokerage office is unique. Each associate broker has great independence and flexibility. However, he still works in a collective effort with other associates and the designated broker to consummate *one* transaction, and one commission is paid that is later divided among all who participated.

In our view, the real estate brokerage office is best described in RCW 82.04.030 as a "group of individuals acting as a unit, . . ." The business and occupation tax, therefore, must be levied only once against each commission. The designated broker must pay the tax on the portion of the gross commission which he retains and the associate broker (if an independent contractor) must pay the tax on the share he receives.

█ The result of this statutory interpretation is that revenue rule 128, as amended, was properly held null and void as violative of legislative intent. The power of an administrative agency to promulgate rules is not unlimited. The Department of Revenue may not legislate, and the rules which it creates must be within the framework of policy laid down in the statute. *State ex rel. West v. Seattle*, 50 Wn.2d 94, 309 P.2d 751 (1957).

Our interpretation of the legislative intention, in effect, reinstates the original revenue rule 128 until RCW 82.04.255 became effective on July 1, 1970. There is further indication that this earlier ruling correctly embodied the intent of the legislature, as the legislature silently acquiesced in it for a number of years. The original rule was promulgated near the time that the business and occupation statutes were passed in 1935. The legislature never concerned itself with the effect of this ruling, even though the statutes were amended in other ways.

█ In *Smith v. Northern Pac. Ry.*, 7 Wn.2d 652, 665, 110 P.2d 851 (1941) the Supreme Court said: " '[W]here the legislature has silently acquiesced' in the administrative construction by failing to amend the particular act, 'the executive construction is accepted generally by the

courts as persuasive.' " *State ex rel. Ball v. Rathbun,* 144 Wash. 56, 59, 256 P. 330 (1927).

While not determinative in itself of legislative intent, this acquiescence coupled with the fact that the legislature quickly adopted RCW 82.04.255 after the amended ruling became effective, is persuasive evidence that the double tax permitted by amended revenue rule 128 was not intended by the legislature.[3] *See Sears, Roebuck & Co. v. King County,* 5 Wn. App. 273, 487 P.2d 221 (1971).

We do not agree with the Department of Revenue's contention that the trial court lacked jurisdiction to award a refund. This argument was not presented to the trial court, and in any event, RCW 82.32.180, relating to obtaining a tax refund, was complied with.

The judgment of the trial court is affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

---

[3]As RCW 82.04.255 prohibited the taxation of associate brokers as well where the designated broker had paid the tax, it might be argued that original revenue rule 128, taxing associate brokers, was also violative of legislative intent, and the full tax was always intended to be directed towards the designated broker. This, however, ignores the fact that associate brokers were taxed for years under revenue rule 128, and the legislature only responded when that tax became a double tax, due to the elimination of the designated broker's deduction.