[No. 19799-1-I.   Division One.   August 15, 1988.]

RHO COMPANY, INC., *Appellant,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Joseph D. Holmes, Philip A. Talmadge,* and *Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Mary E. Fairhurst, Assistant,* for respondent.

GROSSE, J.—Rho Company, Inc. (Rho), appeals the Board of Tax Appeals' (Board) denial of its petition for a refund of B & O taxes.

The facts are largely undisputed. Rho is engaged in the contract personnel business which involves matching individuals with technical skill (contract personnel), usually engineers, with clients or buyers, usually manufacturers or engineering firms, who have a need for such skills for a temporary but not permanent period of time.

Rho matches an available job from a client with contract personnel capable of performing that job. Contract personnel are solicited either through direct contact based on prior business relationships or through general advertising. When a client has a job for contract personnel the client will advise Rho who then furnishes the client with resumes maintained in Rho's files of personnel who appear to have the requested qualifications. If Rho does not have resumes on file which contain the skills requested, it will advertise for personnel with those skills. Rho does not personally interview contract personnel but leaves that to the client.

Rho acts as a go–between with regard to salary. The negotiations are between the contract personnel and the client. Where the job is away from the contract personnel's permanent place of residence the client will inform Rho

what it will pay for travel expenses and per diem to the contract personnel. These amounts remain the prerogative of the client.

As compensation, Rho receives a percentage markup of the direct wage paid to the contract personnel, exclusive of travel and per diem. This markup covers Rho's fee for services rendered and includes payments for social security, unemployment insurance, workmen's compensation, and paid holidays and vacations, all of which are items paid by Rho to or on behalf of the contract personnel.

Customarily Rho and the client enter into a master contract which, in turn, is supplemented with a purchase order covering specific skills, and subsequently, individually named contract personnel. The master contract provides that the contract personnel hired by the client is the employee of Rho and not the employee of the client.[1] For their part, the contract personnel enter into a written agreement with Rho.[2] After having been offered and having

[1]For example, Boeing Contract Terms and Conditions:

1. Seller's [Rho's] relationship to Buyer [Boeing] in the performance of this order is that of an independent contractor. The personnel performing services under this order shall at all times be under Seller's exclusive direction and control and shall be employees of Seller and not employees of Buyer. Seller shall pay all wages, salaries and other amounts due its employees in connection with this order and shall be responsible for all reports and obligations respecting them relating to social security, income tax withholding, unemployment compensation, workmen's compensation and similar matters.

Exhibit attached to Stipulation of Facts and Offer of Exhibits.

The agreement with Westinghouse, attached as an exhibit to the Stipulation of Facts and Offer of Exhibits, under Article III—Status of Seller & Its Employees & Employment Requirements, provides in part:

All persons provided under this order shall be employees of Seller. Seller's employees shall be under the direct technical supervision of WH. However, Seller's relationship to WH in the performance of this agreement is that of an independent contractor. . . . Employees of Seller shall in no sense be considered employees of WH and thus shall not be subject to any provisions of WH's policies covering the benefits or rights of WH employees.

[2]For example, one agreement with Boeing provides:

"I, the undersigned, as a condition precedent to . . . my present assignment with . . . agree as follows:

accepted employment, contract personnel report to the client at the client's facility where the client assigns them a project, a place to work, and furnishes them with supplies and materials to do the job. The client supervises, critiques and evaluates performance, and determines the length of employment and whether or not to terminate, with or without cause. If contract personnel desire a raise they seek it directly from the client. Rho does not participate in any of these actions or decisions.

After a contract personnel reports to a client Rho receives information from the client on the time the contract personnel has worked and the amount to be paid for those services. Rho then mails to the contract personnel a paycheck and any payments for travel and per diem. Rho has no further contact with the contract personnel relative to the current employment.

In 1984 Rho was audited by the Department of Revenue for the period January 1, 1979, through December 3, 1983. The audit resulted in an assessment for excise tax liability and interest. This assessment was based upon the auditor's determination that Rho was engaged in the business of providing services and was taxable under RCW 82.04.290 on its gross income without deducting payroll or per diem living or travel costs for its contract personnel. Rho protested the assessment to the Department of Revenue and a hearing was held. A determination issued which said that all of Rho's gross income was subject to the B & O tax, including the wages and per diem costs. Rho then appealed this determination to the Board of Tax Appeals. The Board conducted a formal hearing and concluded that Rho had been properly taxed and dismissed Rho's argument that if it was an employer, then it was a "processor for hire", and taxable at a lower rate. Rho appealed the Board's decision to superior court which affirmed.

---

"(i) I recognize that I am an employee of Rho and that I am not an employee of Boeing for any purpose whatsoever and that the compensation and employee benefits received by me from Rho . . ."

One issue is presented on appeal: Whether or not the Board properly determined that Rho was subject to tax under RCW 82.04.290 as a service business and not entitled to deductions for payroll and per diem living and travel expenses? This issue can be broken into two questions:

A. Were the contract personnel properly classified as Rho's employees rather than as employees of the respective clients of Rho?

B. Whether or not the payroll and per diem expenses for the contract personnel were deductible as reimbursements under WAC 458-20-111?

Rho contends that the Board looked solely to the language in the contracts to find that an employer/employee relationship existed between Rho and the contract personnel. Rho asserts that this interpretation places form over substance, and argues that if the focus is properly placed on the manner in which it conducts its business, it is obvious that the contract personnel are not employees of Rho. Rather, Rho acts merely as an agency conduit between the client and the contract personnel by supplying personnel to the client, collecting payment for wages from the client, and remitting those wages to the contract personnel. In the alternative, Rho argues that it is a "processor for hire" because it supplies "labor" to the client to make products from raw materials supplied by the client. A processor for hire is taxed at a lower rate under RCW 82.04.280.

The Department, on the other hand, takes the position (one in which the Board and trial court concurred) that the focus is not on the employer/employee relationship that in fact existed, but rather on the nature of the service that Rho performed for its clients. That "service", according to the Department, included as an essential element the creation of a legal employer/employee relationship between Rho and the contract personnel. Therefore, the Department reasons, Rho's payments to the contract employees must be included in gross income pursuant both to the statutory

definition of gross income and to the failure of such payments to qualify pursuant to WAC 458–20–111 as advances or reimbursements.[3]

The standard of review for a formal hearing before the Board is governed by RCW 34.04.130. *UPS, Inc. v. Department of Rev.*, 102 Wn.2d 355, 687 P.2d 186 (1984). The standard is error of law and under this standard the reviewing court may substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law. *UPS, Inc. v. Department of Rev., supra; Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). Agency findings of fact will be reviewed under the clearly erroneous standard, *Hitchcock v. Department of Retirement Sys.,* 39 Wn. App. 67, 71, 692 P.2d 834 (1984), *review denied,* 103 Wn.2d 1025 (1985), or under the arbitrary and capricious standard. *Northern Pac. Transp. Co. v. State Utils. & Transp. Comm'n,* 69 Wn.2d 472, 418 P.2d 735 (1966).

---

[3]WAC 458–20–111 provides in pertinent part:

"The word 'advance' as used herein, means money or credits received by a taxpayer from a customer or client with which the taxpayer is to pay costs or fees for the customer or client.

"The word 'reimbursement' as used herein, means money or credits received from a customer or client to repay the taxpayer for money or credits expended by the taxpayer in payment of costs or fees for the client.

"The words 'advance' and 'reimbursement' apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, other than as agent for the customer or client.

"There may be excluded from the measure of tax amounts representing money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.

"The foregoing is limited to cases wherein the taxpayer, as an incident to the business, undertakes, on behalf of the customer, guest or client, the payment of money, either upon an obligation owing by the customer, guest or client to a third person, or in procuring a service for the customer, guest or client which the taxpayer does not or cannot render and for which no liability attaches to the taxpayer. It does not apply to cases where the customer, guest or client makes advances to the taxpayer upon services to be rendered by the taxpayer or upon goods to be purchased by the taxpayer in carrying on the business in which the taxpayer engages."

A business and occupation tax is imposed on the act of engaging in business in this state. RCW 82.04.220. The term "business" is defined to include "all activities engaged in with the object of gain, benefit, or advantage to the taxpayer . . ." RCW 82.04.140. The term "gross income" is defined to mean:

[T]he value proceeding or accruing by reason of the transaction of the business engaged in and includes . . . compensation for the rendition of services . . . all without any deduction on account of the cost of . . . labor costs, . . . taxes, or any other expense whatsoever paid . . .

RCW 82.04.080. RCW 82.04.290 is a catchall section that provides for the levy of B & O taxes on the gross income of any business engaged in rendering any type of service. The Department of Revenue has promulgated several rules to aid the application of these statutes to particular businesses. *See* WAC 458–20. WAC 458–20–138 and –224 illustrate those businesses which are rendering "services" as provided in RCW 82.04.290. Such businesses include law firms, collection agencies, and employment agents.

■ In order to answer the question posed, were the contract personnel properly classified as Rho's employees rather than employees of Rho's clients, the Board was required to determine whether Rho was the employer *in fact* or simply an agent or conduit for the client. *Boise Cascade Corp. v. State*, 3 Wn. App. 78, 473 P.2d 429 (1970), is instructive. *Boise Cascade* involved an appeal of a tax assessment for the services of a construction company, S & W, who built a mill for Boise Cascade. In order to defeat sales tax liability for the charges for services by S & W, Boise Cascade sought to prove that S & W was an agent of Boise Cascade, and not an independent contractor. Boise Cascade introduced evidence of the contract language which designated S & W as "agent" and also introduced evidence of the amount of control which it exerted over the employees of S & W. S & W was responsible for its payroll and for state and federal tax payments. The court stated·

that the contract language by itself was insufficient to establish the existence of an agency relationship. The concern was whether S & W acted as agent regarding the employment of workmen for the project. S & W brought skilled workmen to the project and, despite the controls exercised by Boise Cascade, exercised much skill and judgment in the daily supervision and execution of the work. In holding that an agency relationship had *not* been established the court noted:

> Boise Cascade could have built the mill with its own employees, but it chose not to do so. Instead, Boise Cascade contracted with S & W to avoid direct contact with building and construction labor unions and to avoid other problems incidental to the administration of the labor force. The payrolls, federal withholding tax payments, social security payments, unemployment compensation premiums, and state industrial insurance premiums were administered, prepared and reported by S & W. Under these circumstances, we do not believe that S & W was "so assimilated [into Boise Cascade] as to become one of its constituent parts."
>
> . . .
>
> If Boise Cascade had taken on the responsibilities of dealing with the building and construction labor unions, and if the workers had known that they were directly accountable to and paid by Boise Cascade, there would be more support for Boise Cascade's position.

(Citations omitted.) *Boise Cascade,* at 90.

We glean from *Boise Cascade* that the entity that represents itself as the employer to certain state and federal agencies is presumed to be the employer in fact. However, the presumption is not conclusive. Similarly, the language in the contracts between Rho and its clients is not conclusive, although it is a factor to consider and is evidence of intent. In essence, form is not to be exalted over substance. *Fidelity Title Co. v. Department of Rev.,* 49 Wn. App. 662, 745 P.2d 530 (1987) (court looked to manner in which Fidelity conducted its business, not to its licensing classification), *review denied,* 110 Wn.2d 1010 (1988).

While it is *not* an established rule that principles of tort and agency law necessarily apply to taxation situations, whether or not a principle from one area of the law will be applied to another depends on the facts and circumstances of the transaction and on the context or purpose in which they are considered.[4] For purposes of the imposition of the B & O tax in this case, the concept of control and right of control is a factor that must be considered. Under principles of tort and agency law the element of control is important. Control over the employee carries with it the ability to control the risk of exposure to liability. The master enjoys the benefits of the labor of the servant and thus is accountable for his or her actions. Correspondingly, in tax cases, whoever has the right to control the employee and directs the activities and energies of the employee benefits directly from the productivity of the employee and should arguably be liable for any tax on the benefits accruing as a result of the employee's labors. Thus, in this case the key question in determining who is the actual employer is who controls, or has the right to control, the contract personnel.

Other relevant factors to consider in the employer *in fact* determination include, who sets the amount of compensation, who is personally liable for payment of the wages or salaries, and whether or not the entity claiming to be merely an agent or conduit also performs activities similar

---

[4]*See* WAC 458–20–105 ("The fact that a person is construed to be an employee under the provisions of the State Employment Security Act or the Federal Social Security Act, does not conclusively establish such persons as an employee within the provisions of the Revenue Act."). *Fisher v. Seattle,* 62 Wn.2d 800, 384 P.2d 852 (1963) (issue discussed whether or not principles of vicarious liability applied to a determination under the workers' compensation act); *Washington Sav–Mor Oil Co. v. State Tax Comm'n,* 58 Wn.2d 518, 364 P.2d 440 (1961) (court refused to apply corporate principle of "lifting the corporate veil" in determining whether two separate but related corporations were actually one for the purpose of determining tax liability); *Rena–Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 463 P.2d 622 (1970) (court again refused to apply corporate/tort law principle of piercing the corporate veil to tax law situations); *Boise Cascade Corp. v. State, supra* (for purposes of sales tax, RCW 82.08, the test for determining whether a person is an agent or independent *contractor is not the same as applied* in tort or contract cases, but elements of the inquiry are analogous).

to those of its client in its own behalf through its own employees. See, for example, *Wilbur–Ellis Co. v. Department of Rev.*, 2 Wash. Tax Rep. (CCH) ¶ 201–427 (1981), wherein the actual business operations and accounting records of Wilbur–Ellis reflected that it acted solely as agent between the manufacturer and the customer by directing the shipping and collecting and remitting payment less a 5 percent fee to the manufacturers.

■ The issue of control or agency is also central to the disposition of the question of whether the payroll and per diem expenses are deductible under WAC 458–20–111 as reimbursements or advances.[5] A payment to a taxpayer is excluded from the taxpayer's gross income if (1) it is a customary reimbursement for an advance made to procure a service for the client, (2) the taxpayer does not or cannot render the service, and (3) the taxpayer was not liable for the payment. *See Christensen, O'Connor, Garrison & Havelka v. Department of Rev.*, 97 Wn.2d 764, 649 P.2d 839 (1982).

*Walthew, Warner, Keefe, Arron, Costello & Thompson v. Department of Rev.*, 103 Wn.2d 183, 691 P.2d 559 (1984) is instructive. There, advances made by a law firm for litigation costs including court reporters, expert witnesses, and process servers were held to be costs for which the client was primarily liable. The law firm was acting solely as agent for the client in paying those costs. The *Walthew* court interpreted WAC 458–20–111 in conjunction with the statute authorizing the B & O tax. In so doing the court focused on the wording defining gross income to include compensation for the rendition of services, RCW 82.04.080, and the wording defining "value proceeding or accruing" as "consideration . . . actually received or accrued." RCW 82.04.090. The court held compensation or consideration for

---

[5]"Tax deductions must be construed narrowly and the burden of proving entitlement to the deduction is on the taxpayer." *Browning v. Department of Rev.*, 47 Wn. App. 55, 57, 733 P.2d 594 (1987); *UPS, Inc. v. Department of Rev., supra.*

the service to be the basis for the tax. *Walthew,* at 187. The court further stated:

The Department contends that the exception in Rule 111 reflects the statutory intent to include all income except for incidental costs which are not necessary for the taxpayer's business. According to the Department, this is the meaning behind Rule 111's exclusion on the basis of agency or nonliability:

The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, *other than as agent* for the customer or client.

(Italics ours.) WAC 458–20–111. It, therefore, concludes that any client reimbursement to the taxpayer is properly included in gross income.

We disagree with the Department's analysis. Nothing in the statute refers to exceptions on the basis of agency and liability. The language in Rule 111 is consistent with the statute if it is read to reflect the statute's obvious intent to tax only gross income which is "compensation for the rendition of services" (RCW 82.04.080) or "consideration . . . actually received or accrued" (RCW 82.04.090). Rule 111 excludes those reimbursements for advances which are merely pass–throughs, where the taxpayer liability, if any, to the third party provider is solely agent liability . . .

*Walthew,* at 187–88. While we recognize that the rule in *Walthew* was bolstered by the fact that the reimbursements at issue were of the kind that attorneys are prohibited from paying other than as an agent for their client, we do not believe that the court's reasoning is fact specific. Principles of the law of agency are important considerations in determining the gross income of a business such as Rho's. Despite the form of the transaction, the Board must consider the evidence that Rho functioned merely as the agent of the client in paying the wages, travel expenses, and per diem of the contract personnel.

■ It is clear from a review of the record and the

Board's final decision that the Board committed an error of law in that it did not consider the question of the right of control over the contract personnel or the holding in *Walthew* to determine whether, despite the existence of an employer/employee relationship, Rho was merely an agent for the client for purposes of the payment of wages. Instead, the Board focused on the language contained in the various contracts to the exclusion of the evidence in the record which indicated who had authority to hire, fire, extend the contract, determine the salaries, and who had the ultimate responsibility for paying the personnel. Thus, the Board confined its inquiry to the form of the transaction and not its substance. Accordingly, we must remand this case to the Board for further consideration of the principles and factors set forth above. *See Safeco Ins. Cos. v. Meyering,* 102 Wn.2d 385, 687 P.2d 195 (1984); *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n,* 83 Wn.2d 446, 518 P.2d 1237 (1974).

Upon remand, if the Board determines that the contract personnel are not employees of Rho *and/or* that Rho is not primarily responsible for payment of compensation, then the wages or salaries are excludable from Rho's measure of tax as advances or reimbursements because those sums are merely "pass throughs" from which Rho does not benefit.

We also remand for consideration of Rho's "processor for hire" argument. If Rho is found to be the employer in fact, then Rho may be a processor for hire. *See* WAC 458–20–136. Indeed, in dismissing this argument out of hand the Board acted in an arbitrary and capricious manner. *See UPS, Inc. v. Department of Rev.,* 102 Wn.2d 355, 687 P.2d 186 (1984). In its consideration of Rho's processor for hire argument, the Board must consider what activities are involved in being a processor for hire and the reason why processors are taxed at a lower rate.

We reverse and remand to the Superior Court with instructions that this case be returned to the Board of Tax

Appeals for further proceedings consistent with this opinion.

SWANSON and WILLIAMS, JJ., concur.

Review granted by Supreme Court November 29, 1988.