[No. 59242-0. En Banc. December 10, 1992.]

KIM IMPECOVEN, ET AL, *Respondents*, v. THE DEPARTMENT
OF REVENUE, *Appellant*.

*Kenneth O. Eikenberry, Attorney General,* and *Donald Cofer, Assistant,* for appellant.

*Turner, Stoeve, Gagliardi & Goss, P.S.,* by *Richard P. Algeo,* for respondents.

DOLLIVER, J. — The defendant Department of Revenue (DOR) seeks review of the grant by the trial court of summary judgment in favor of plaintiffs Kim Impecoven and Dan Kelly, which ordered a refund of the business and occupation (B&O) tax assessed plaintiffs on the share of insurance commissions each received from their affiliated insurance agent/broker.

Plaintiffs hold regular insurance agent licenses which authorize them to sell insurance either under a direct appointment contract with an insurance company or as an affiliate with an insurance agent holding an appointment contract. *See* RCW 48.17.150(1)(g); RCW 48.17.160; WAC 284-17-420. Plaintiffs, like approximately 80 percent of independent insurance agents, hold "affiliate licenses", rather than direct appointment contracts, for economic and competitive advantages.

Under an appointment contract, agents are limited in the insurance products they can sell to those products available from that insurance company. In order to increase the diversity of insurance products they can offer and, in turn, increase their clientele or "book of business", independent agents "pool" their business and affiliate with another agent/broker who holds numerous appointment contracts. Pooling business also allows agents to qualify for contingent bonuses offered by insurance companies for premium sales over $250,000 annually.

To benefit from these advantages, plaintiffs sell insurance as affiliates of the J.D. Blasingame Agency, Inc., which holds a number of appointment contracts. As affiliated agents, plaintiffs are not employees or corporate officers of Blasingame; they are independent contractors. Plaintiffs characterize their activities as follows:

> [Plaintiffs] identify[] leads, decid[e] which insurance company or product is best suited for a particular client, and determine whether to make a final sale of insurance coverage. . . .

Clerk's Papers, at 23. In contrast, Blasingame

> negotiate[s] and enter[s] into . . . appointment contracts with . . . insurance companies . . . deals with the Commissioner's office on licensing, maintains the office, signs the insurance contracts, and collects all commissions.

Clerk's Papers, at 22. Upon the sale of an insurance product, the insured pays premiums directly to the insurance company, the insurance company pays Blasingame a commission for each sale, and Blasingame then pays the agent responsible for

the sale 60 percent of that commission. The commission rate was independently negotiated between the plaintiffs and Blasingame. Plaintiffs have no right to receive their commissions directly from any insurance company.

In January 1987, DOR assessed Impecoven and Kelly $2,265 and $1,569, respectively, as B&O excise tax on commissions received from Blasingame between January 1, 1982, and September 30, 1986. Plaintiffs opposed the assessments and a telephonic hearing was held on November 19, 1987. On September 23, 1988, DOR issued written determinations confirming the imposition of the B&O excise tax. Plaintiffs then paid the assessed tax and subsequently paid additional B&O tax to the date the suit was filed on May 25, 1989.

Plaintiffs appealed the DOR determinations. On October 12, 1990, the trial court granted plaintiffs' motion for summary judgment ruling that plaintiffs were entitled to a refund in the amount of $5,033, with interest, conditioned on Blasingame's payment of the tax on the full commission. DOR moved for reconsideration and the court modified its order conditioning the plaintiffs' refund on verification of Blasingame's payment. DOR appealed to Division Two of the Court of Appeals, which certified the case to this court. We reverse.

The general B&O tax liability provision, RCW 82.04.220, provides:

> There is levied and shall be collected from every *person* a tax for the act or privilege of *engaging in business* activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.

(Italics ours.) "Person" and "engaging in business" are defined as follows:

> "Person" or "company", herein used interchangeably, means any individual . . . firm, copartnership, joint venture, club, company, joint stock company, . . . corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, nonprofit, or otherwise . . ..

RCW 82.04.030.

"Engaging in business" means commencing, conducting, or continuing in *business* and also the exercise of corporate or franchise powers . . ..

(Italics ours.) RCW 82.04.150. " 'Business' includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly." RCW 82.04.140.

Under the statute, tax liability attaches when a "person" engages in an activity with the object of gain. Employees are exempt from payment of B&O tax, but independent contractors such as plaintiffs are not exempt. RCW 82.04.360.

Plaintiffs argue they and Blasingame are one "person" for the purposes of B&O taxation because together they constitute a "group of individuals acting as a unit" in obtaining one commission. In support of this position, plaintiffs rely on *Davenport, Inc. v. Department of Rev.*, 6 Wn. App. 581, 583, 494 P.2d 1376 (1972), which interpreted the provision as it applied to real estate brokers. Plaintiffs argue *Davenport* should also apply to insurance agents because there is no significant difference between the licensing structure and business operation of the two businesses.

Prior to the *Davenport* decision, DOR had amended its regulation to disallow designated real estate brokers from deducting the amount of commissions paid to associate brokers, thus taxing the designated broker on the full commission and the associate brokers on the share each received. *See* WAC 458-20-128. Following DOR's amendment, the Legislature enacted RCW 82.04.255, which eliminated the tax on the associate broker when the brokerage office paid tax on the full commission. The *Davenport* decision interpreted RCW 82.04.220 during the window period between DOR's amendment of its regulation and the effective date of RCW 82.04.255.

In *Davenport*, a designated real estate broker challenged DOR's amended regulation. *Davenport, Inc.*, 6 Wn. App. at 584. DOR asserted the full commissions were gross income of Davenport for B&O tax purposes even though the portion of the commissions paid to associate brokers was also sub-

ject to B&O tax. *Davenport, Inc.*, 6 Wn. App. at 584. The court disagreed holding that only one tax could be assessed on a single commission. The court concluded that a broker and its associate brokers met the definition of one "person" because they constituted " 'a group of individuals acting as a unit". *Davenport, Inc.*, 6 Wn. App. at 585 (quoting RCW 82-.04.030). This conclusion was made in the context of legislative acquiescence to the original DOR regulation which allowed the deduction and the enactment of RCW 82.04.255 following DOR's elimination of the deduction.

 The unique set of circumstances supporting a specific legislative intent to provide a deduction for real estate brokers in *Davenport*, however, is not present in this case. To the contrary, the legislative history supports treating insurance agents differently from real estate agents. The Legislature limited the application of RCW 82.04.255 to real estate agents and has not enacted legislation allowing a similar deduction for insurance agents. Rather, legislation seeking similar partial exemptions for insurance agents for amounts paid to other agents has failed. *See* Senate Bill 5078, 51st Legislature (1989) (died in Senate Ways and Means Committee; *see* 1 Legislative Digest 40 (final ed. 1989-1990)); House Bill 1063, 51st Legislature (1989) (died in House Revenue Committee; *see* 2 Legislative Digest 33-34 (final ed. 1989-1990)); Senate Bill 5210, 52d Legislature (1991) (died in Senate Ways and Means Committee; *see* 1 Legislative Digest 99-100 (final ed. 1991-1992)). The current regulation provides:

> No deduction is allowed for commissions, fees, or salaries paid to other agents, brokers, or solicitors nor for other expenses of doing business.

WAC 458-20-164. Further, in 1983, rather than enacting a partial exemption, the Legislature enacted RCW 82.04-.260(14) which taxes insurance agents, brokers and solicitors at the rate of 1.0 percent while real estate agents are taxed at a rate of 1.50 percent. RCW 82.04.255.

In the absence of specific legislative intent supporting a deduction for commissions paid to other insurance agents,

we construe RCW 82.04.255 to best advance the legislative purpose behind the general liability provision. *See State v. Roberts*, 117 Wn.2d 576, 584, 817 P.2d 855 (1991). In so doing, we construe the statute as a whole and read each provision in relation to the other provisions. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 134, 814 P.2d 629 (1991). Although the courts retain "the ultimate authority" to determine the purpose and effect of a statute, we grant "[c]onsiderable judicial deference" to the interpretation of the provision by those charged with its enforcement. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992); *Keller v. Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979).

■■ This court has held the legislative purpose behind the B&O tax scheme is to tax virtually all business activity in the state. *Automobile Club v. Department of Rev.*, 27 Wn. App. 781, 786, 621 P.2d 760 (1980) (citing *Time Oil Co. v. State*, 79 Wn.2d 143, 483 P.2d 628 (1971)); *Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 517, 463 P.2d 622 (1970). The statute has been construed as providing for the taxing of separate but related activities. *See Supply Laundry Co. v. Jenner*, 178 Wash. 72, 79, 34 P.2d 363 (1934).

In *Supply Laundry*, an insurance agent challenged the tax on his commissions, which were a percentage of the premiums paid to the insurance company, as double taxation because the premiums were already taxed. The court responded:

> While the activities of the insurance agent are related to that of the insurance company, those of the latter are much broader in scope than those of the former. . . . The gross receipts of each may in the final analysis result from the sale of the same merchandise, yet this would furnish no logical ground for contending that there was double taxation.

*Supply Laundry Co.*, 178 Wash. at 79.

The statute, itself, allows a "person" who engages in separate but related activities to be taxed on each activity unless exempted. *See* RCW 82.04.440; *see also Drury the Tailor v. Jenner*, 12 Wn.2d 508, 510, 515, 122 P.2d 493 (1942) (prior to subsequent legislative exemption, tax properly imposed on

activity of retail and on manufacture as each constitutes a separate activity).

In addition, we have refused to ignore the business structure of entities engaged in separate but related activities to avoid B&O taxation. *See Washington Sav-Mor Oil Co. v. State Tax Comm'n*, 58 Wn.2d 518, 364 P.2d 440 (1961). In *Sav-Mor Oil*, the plaintiff challenged the assessment of B&O tax on sales to its parent corporation arguing, as a wholly owned subsidiary, it was actually a part of the parent company and could not make a sale to itself. The court rejected the argument.

> [The appellant does not] contend that the transactions involved in this suit would not be subject to the tax if they had transpired between two unaffiliated corporations. . . .
>
> . . . .
>
> [The appellant] has admittedly secured financial and competitive advantages during the ten years of its existence, and it has employed the legal habiliments incident to a sale in its transactions. . . .
>
> . . . .
>
> The appellant asks us to disregard its separate existence . . . in order to gain an advantage. This we cannot do. The legislature has not seen fit to exclude transactions between affiliated corporations, and we find in the facts of this case nothing which would justify the judicial engrafting of such an exclusion upon the statute.

*Washington Sav-Mor Oil Co.*, 58 Wn.2d at 520-23.

■ As in *Sav-Mor Oil*, plaintiffs and Blasingame have affiliated with each other in order to gain financial and competitive advantages. While the activities are related, plaintiffs readily admit their activities differ from those engaged in by Blasingame. Although Blasingame is not a party to this suit, we reject plaintiffs' characterization that DOR is taxing the "mere cutting of a check". Blasingame's issuance of a check to plaintiffs results solely from the structure plaintiffs have chosen in order to gain various advantages. As in *Supply Laundry*, the gross receipts of each may ultimately result from the same source, but each activity is separate and each may be taxed.

■ We reverse the trial court's grant of summary judgment and order of refund in favor of plaintiffs. Because the facts are not in dispute, we order entry of summary judgment in favor of DOR, the nonmoving party. *See Leland v. Frogge*, 71 Wn.2d 197, 427 P.2d 724 (1967); *Washington Ass'n of Child Care Agencies v. Thompson*, 34 Wn. App. 225, 660 P.2d 1124 (1983); *see generally* 4 L. Orland, Wash. Prac., *Rules* § 5656 (1983 & Supp. 1991). Given our resolution of this case, we need not address the further issues raised by DOR.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.