# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PHARMACY CORPORATION OF AMERICA, a California corporation, | No. 52685-9-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Pharmacy Corporation of America (PharMerica) appeals the superior court's order granting the Department of Revenue's motion for summary judgment and dismissing PharMerica's tax refund action. PharMerica argues that the preferential tax rate for reselling prescription drugs in RCW 82.04.272 applies when PharMerica provides prescription drugs to institutional healthcare providers and the drugs are paid for by the residents or third party payors. Because the plain language of RCW 82.04.272 supports the Department's interpretation that the preferential tax rate does not apply, we affirm the superior court's order.

## FACTS

PharMerica is an institutional pharmacy that contracts with institutional healthcare providers, such as nursing homes, assisted living facilities, inpatient rehabilitation centers, and

other long-term care facilities (Customers). PharMerica provides prescription and non-prescription drugs, pharmaceutical supplies, and pharmaceutical consulting services (prescription drugs).[1] PharMerica is incorporated in Delaware and has its principle place of business in Kentucky. PharMerica has approximately 96 institutional pharmacies in 45 states, including two pharmacy and warehouse facilities in Washington.

Under the terms of the contracts PharMerica has with its Customers, the Customers are responsible for providing PharMerica with complete resident billing and payment information for all prescription drug sales. However, the Customers are only responsible for directly paying PharMerica for prescription drugs that are used in the Customers' own house stock of pharmaceuticals.

The contracts also allow PharMerica to provide prescription drugs to the Customers' residents. PharMerica's prescription drugs provided to the Customers' residents are directly billed to and paid for by third party payors (e.g., Medicare, Medicaid, or an insurance company) or by the residents themselves. PharMerica's Customer will pay for prescription drugs that PharMerica provides to the Customer's residents only if the Customer had failed to provide accurate or timely billing information to PharMerica, the Customer is being compensated at a per diem rate for the care of the resident, or the Customer agrees to assume responsibility for the payment.

Specifically, PharMerica's contracts with its Customers includes the following terms:

**4. Pricing and Payment Terms**

**(a) Charges to Facility**

---

[1] Although PharMerica's contracts with its Customers also include non-prescription drugs, pharmaceutical supplies, and pharmaceutical consulting services, we use the term "prescription drugs" as the only issue in this case concerns prescription drugs.

. . . .

(2) Customer shall be financially responsible for Services and Products [PharMerica] provides for a resident only if Customer, or its agent, gives written permission to [PharMerica] to accept the charges if [PharMerica] is not eligible for reimbursement for its Services and Products from the resident to a third party payor.

. . . .

**(b) Third Party Payors.** For Services and Products that [PharMerica] provides to a resident who has authorized [PharMerica] to be his pharmacy Provider and who has valid coverage for pharmacy benefits through a third party payor that is accepted by [PharMerica], [PharMerica] will directly bill the third party payor. Nothing in this Agreement requires [PharMerica] to participate in any particular third party payor's program.

**(c) Private Pay Residents.** For Services and Products that [PharMerica] provides to a resident who has authorized [PharMerica] to be his pharmacy Provider and who is not eligible for coverage under a third party program accepted by [PharMerica] ("Private Pay Residents"), [PharMerica] will directly bill the Private Pay Resident or his legally responsible representative. If the Private Pay Resident fails to pay any amount due to [PharMerica] within [PharMerica's] standard payment terms for Private Pay Residents, [PharMerica] may suspend providing Services and Products to the resident unless the Customer agrees to be responsible for Services and Products for the Private Pay Resident. In such a case, [PharMerica] will directly bill Customer (and Customer shall pay for) all Services and Products provided to the Private Pay Resident in accordance with subsection (a) above.

Clerk's Papers (CP) at 250. PharMerica charges a different rate for prescription drug sales directly to the Customer than for sales to the Customer's residents.

Regardless of the type of sale, PharMerica provides the prescription drugs directly to the Customer. The Customer is then responsible for receiving, storing, securing, and administering the prescription drugs that are ordered from PharMerica. PharMerica also contracts to be the exclusive supplier for each Customer and the preferred provider for all residents.

For the relevant period from 2008 through 2012, PharMerica paid the retail tax rate (.471 percent) on all its sales. In 2012, PharMerica filed a refund request with the Department.[2] PharMerica argued that all of its transactions were subject to the preferential tax rate for warehousing and reselling prescription drugs under RCW 82.04.272.

RCW 82.04.272(1) allows a reduced tax rate for persons engaging in the business of warehousing and reselling drugs for human use.[3] RCW 82.04.272(2)(b) provides,

> "Warehousing and reselling drugs for human use pursuant to a prescription" means the buying of drugs for human use pursuant to a prescription from a manufacturer or another wholesaler, and reselling of the drugs to persons selling at retail or to hospitals, clinics, health care providers, or other providers of health care services, by a wholesaler or retailer who is registered with the federal drug enforcement administration and licensed by the pharmacy quality assurance commission.

The Department's Excise Tax Advisory 3180.2013 (ETA 3180) explains that RCW 82.04.272 has both a "seller" and a "buyer" requirement that must be met before the preferential tax rate could be applied. According to ETA 3180, the statute requires that the seller "resells the prescription drugs directly" to a buyer who is either a retailer with a pharmacy license or a "hospital, clinic, health care provider, or other provider of health care services." CP at 187–88.

---

[2] Throughout the proceedings below, PharMerica also claimed it was entitled to a tax refund because it claimed a deduction for "compensation from public entities for health or social welfare services" under RCW 82.04.4297. PharMerica is not appealing the denial of its refund claim on this basis. Therefore, the applicability of RCW 82.04.4297 is not at issue in this appeal.

[3] RCW 82.04.272 was amended in 2013. LAWS OF 2013, ch. 19 §127. However, the amendment only changed "state board of pharmacy" to the current "pharmacy quality assurance commission." There is no substantive difference between former RCW 82.04.272 (2003), in effect during the relevant tax period, and the current RCW 82.04.272. Accordingly, we cite to the current version of the statute.

4

The Department reviewed PharMerica's refund request and determined that PharMerica was only entitled to a partial refund for prescription drug sales paid for directly by its Customers for their house stock of pharmaceuticals and sales reimbursed by Medicaid. PharMerica appealed the Department's decision to the Department's Appeals Division.

The Appeals Division reviewed the Department's decision and determined that PharMerica was entitled to the preferential tax rate for all prescription drug sales in which payments were made directly by the Customers (all per diem sales, house sales, and sales for which the Customers assumed responsibility). The Appeals Division also determined that PharMerica was not entitled to the preferential tax rate for any prescription drug sales in which third party payors or private pay residents remitted payment for the prescription drugs. The Department's Hearings Division later denied PharMerica's petition for reconsideration of its decision.

The Department issued an additional refund to PharMerica based on the Appeals Division's determination. After the audit process, PharMerica received a reclassification and tax refund on all prescription drug sales except for those that were directly billed to, and paid for by, a third party payor or self-pay resident.

PharMerica filed an appeal to superior court, challenging the Department's decision to refuse any further tax refunds. PharMerica asserted that it was entitled to a refund on taxes paid on transactions in which third party payors or self-pay residents remitted payment because PharMerica should have been eligible for the preferential tax rate for warehousing and reselling prescription drugs under RCW 82.04.272.

The Department filed a motion for summary judgment to dismiss PharMerica's tax appeal. Neither party disputed any of the above facts. The superior court granted the Department's motion for summary judgment and dismissed PharMerica's appeal.

PharMerica appeals the superior court's dismissal of its tax appeal.

ANALYSIS

PharMerica argues that the superior court erred by granting the Department's motion for summary judgment because (1) in all transactions the Customer was the buyer under the common understanding of the term, and (2) the Department's interpretation of the statute is inconsistent with legislative intent. The Department argues that under the plain language of the statute, PharMerica is only entitled to the preferential tax rate on prescription drug sales that meet all the requirements of reselling prescription drugs. Therefore, according to the Department, resort to legislative history and other canons of statutory construction are unnecessary. We agree with the Department. Accordingly, we affirm the superior court's order granting the Department's motion for summary judgment dismissal of PharMerica's tax appeal.

A.    LEGAL PRINCIPLES

We review the superior court's order granting summary judgment de novo. *Auto. United Trades Org. v. State*, 183 Wn.2d 842, 853, 357 P.3d 615 (2015). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file show the absence of any genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). We may affirm the superior court's order granting summary judgment "on any basis supported by the record." *Coppernoll v. Reed*, 155 Wn.2d 290, 296, 119 P.3d 318 (2005).

6

Statutory interpretation is a question of law we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014). The goal of statutory interpretation is to ascertain and carry out the legislature's intent. *Id.* at 762. When possible, we give effect to the plain meaning of the statute as an expression of legislative intent. *Id.* The plain meaning of a statute is "derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). We may use dictionaries to discern the plain meaning of terms with "well-accepted, ordinary" meanings. *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008).

When the plain language of the statute is unambiguous, no further construction or interpretation is necessary. *Jametsky*, 179 Wn.2d at 762. However, if we determine that the statute "'is subject to more than one reasonable interpretation,'" then the statute is ambiguous. *Id.* (quoting *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456, 219 P.3d 686 (2009)). If a statute is ambiguous, then we "'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

B.    BUSINESS AND OCCUPATION TAX RATES

A business and occupation (B&O) tax is imposed on every person as "a tax for the act or privilege of engaging in business activities." RCW 82.04.220(1). Retail sales are taxed at a rate of 0.471 percent of gross proceeds. RCW 82.04.250. However, a preferential tax rate of 0.138 percent applies to the "business of warehousing and reselling drugs for human use." RCW 82.04.272(1). RCW 82.04.272(2)(b) provides,

> "Warehousing and reselling drugs for human use pursuant to a prescription" means the buying of drugs for human use pursuant to a prescription from a manufacturer or another wholesaler, and reselling of the drugs to persons selling at retail or to hospitals, clinics, health care providers, or other providers of health care services, by a wholesaler or retailer who is registered with the federal drug enforcement administration and licensed by the pharmacy quality assurance commission.

This statutory definition requires six elements to be satisfied before a business can claim the preferential tax rate for a prescription drug sale: a business can qualify for the preferential tax rate if it "(1) buy[s] drugs for human use pursuant to a prescription, (2) from a manufacturer or another wholesaler, (3) resell[s] to persons selling at retail or to health care providers, (4) [is] a wholesaler or retailer, (5) [is] registered with the [Drug Enforcement Agency], and (6) [is] licensed by the [Pharmacy Quality Assurance Commission]." *Aventis Pharm., Inc. v. Dep't of Revenue*, 5 Wn. App. 2d 637, 644, 428 P.3d 389 (2018) (footnote omitted). These statutory requirements are explained in ETA 3180, which outlines the requirements of the statute. *Id.* at 647.

Here, the issue is whether the third requirement is satisfied – whether the prescription drug sales which are paid for by third party payors or private pay residents meet the requirement that the drugs are resold by PharMerica to persons selling at retail or to health care providers. We hold that PharMerica's prescription drug sales which are paid for by third party payors or private pay residents do not meet this requirement. Therefore, those transactions are not subject to the preferential tax rate for warehousing and reselling prescription drugs, and the superior court property granted the Department's motion for summary judgment.

C.    PRESCRIPTION DRUG SALES AT ISSUE ARE NOT SUBJECT TO THE PREFERENTIAL TAX RATE

PharMerica argues that the prescription drug sales at issue are subject to the preferential tax rate because in all instances the Customers are acting as the buyers of the prescription drugs

under the plain language of the statute.[4]   PharMerica also argues that the Department's interpretation and application of the statute is contrary to the legislative intent and creates an absurd result.  Because the prescription drug sales at issue are not subject to the preferential tax rate, we affirm the superior court's order granting summary judgment dismissal of PharMerica's tax appeal.

As an initial matter, both parties rely on the characterization used in ETA 3180 and argue extensively over the meaning of the word "buyer."[5]   But the word "buyer" does not appear anywhere in the statute.  Rather, the plain language of the statute requires us to determine the meaning of the term "resell" to determine whether PharMerica's prescription drug sales paid for by third-party payors or are direct paid by the Customers' residents qualify for preferential tax treatment.  *See* RCW 82.04.272(2)(b) ("*reselling* of the drugs to persons selling at retail or to hospitals, clinics, health care providers, or other providers of health care services") (emphasis added).

The statutory scheme does not provide a definition of "resell," but it does provide a definition of "sale."  The statute defines "sale" as "any transfer of the ownership of, title to, or possession of property for a valuable consideration."  RCW 82.04.040(1).

---

[4]  To the extent that PharMerica appears to be arguing that the B&O tax rates apply to the general nature of a business rather than specific transactions, this argument lacks merit.  As the Department points out, businesses can engage in many types of transactions and these transactions are routinely taxed based on their individual natures. *Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 363-64, 841 P.2d 752 (1992); *Aventis Pharm.*, 5 Wn. App. 2d at 649.

[5]  PharMerica asserts that its Customers are the buyers in the transactions at issue because they order, receive, and administer the prescription drugs.  The Department argues that the "buyer" is the party who remits payment for the prescription drugs.

Here, PharMerica claims that all prescription drug sales under their contracts qualify for a preferential tax rate because all of its transactions involve the transfer of possession of prescription drugs to its Customers and there is consideration based on the Customers' promise that PharMerica will receive payment, "either from the [Customers'] residents, or a third-party payor such as Medicare, Medicaid, or other third-party [sic] prescription drug benefit plan." Br. of Appellant at 19. But PharMerica's analysis is flawed in the context of third-party payors and private pay residents because under its contracts, Customers are not promising to pay for the prescription drugs provided by PharMerica to the Customers' residents. PharMerica's Customers are only responsible for paying for the prescription drugs provided to its residents if the Customer fails to provide to PharMerica the appropriate payment information, the Customer is being compensated on a per diem rate for the care of the resident, or the Customer has assumed responsibility for payment for that sale. Therefore, the Customers are simply acting on behalf of the residents by ordering the prescription drugs; the residents are providing PharMerica the promise to pay. Because the valuable consideration is only a promise that PharMerica can provide prescription drugs to the residents who have authorized PharMerica to be their pharmacy provider, and PharMerica is actually being paid by a third-party payor or the resident, PharMerica is not making a prescription drug "sale" or "reselling" the prescription drugs to the Customers in these transactions.

In addition, the contracts between PharMerica and its Customers designate separate billing procedures for third-party payors and private pay residents based on the resident's authorization for PharMerica to act as the resident's pharmacy. In those cases, PharMerica's only recourse for the resident's or third party payor's failure to pay PharMerica is for PharMerica to stop providing

10

prescription drugs to the resident. PharMerica cannot hold a Customer financially responsible for a resident's prescription drugs unless certain conditions, as discussed above, are met. Therefore, for a prescription drug sale that is direct billed to third-party payors or self-paid by the resident, the transaction is fundamentally between the resident and PharMerica, who is authorized to act as the resident's pharmacy.

And even if we adopted the "buyer" analysis argued by the parties and outlined in ETA 3180, the Customers are not the buyers for the transactions at issue here. *See Aventis Pharm.*, 5 Wn. App. 2d at 649 ("The plain meaning of the prescription drug tax unambiguously requires buyers to be either retail sellers or health care providers."). "Buyer" is synonymous with "purchaser." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 306. A "purchaser" is "one that acquires property for a consideration (as of money)." WEBSTER'S NEW INTERNATIONAL DICTIONARY, at 1845.

PharMerica asserts that its Customers are the buyers in the transactions at issue because they order, receive, and administer the prescription drugs. PharMerica argues that no distinction should be made based on who ultimately pays money for the transaction. But the term "buyer" is based on the transfer of consideration. The exchange of consideration—payment—is what distinguishes a buyer or purchaser from a finder, beneficiary, donee, etc. Therefore, the well-accepted and ordinary meaning of "buyer" would be the person who remits payment for the goods. This is especially true in the context of these transactions because the prescription drugs are ordered on behalf of the residents for the residents' treatment. Combined with the fact that the residents, or third-party payors on their behalf, are responsible for payment for the prescription drugs, the residents are the buyers in the disputed transactions.

Moreover, in ETA 3180, the "buyer" requirement states that the seller must "resell[] the prescription drugs directly to a buyer who is . . . [a] hospital, clinic, health care provider, or other provider of health care services." CP at 187-88. Therefore, the Department's definition of "buyer" in ETA 3180 incorporates the same idea of "sale" as the statutory language itself. As explained above, sales are defined by the transfer of valuable consideration. In third-party payor and private pay resident sales, the only transfer of valuable consideration for the prescription drugs is between PharMerica and the third-party payor or resident, not between PharMerica and the Customer. Therefore, PharMerica does not satisfy the buyer requirement defined in ETA 3180.

Under the plain language of RCW 82.04.272 and the Department's interpretation of that language in ETA 3180, the preferential tax rate applies only to prescription drug sales which are paid for directly by the Customers.[6] Accordingly, the superior court properly granted the Department's motion for summary judgment dismissal of PharMerica's tax appeal.

We affirm.

Lee, J.

We concur:

Maxa, C.J.

Sutton, J.

---

[6] Because the plain language of the statute is unambiguous, we do not address Pharmerica's additional arguments regarding legislative intent based on legislative history. *Jametsky*, 179 wn.2d at 762.