[No. 9939-0-II.  Division Two.  November 17, 1987.]

FIDELITY TITLE COMPANY, *Respondent*, v. THE DEPARTMENT OF REVENUE, *Appellant*.

---

*Kenneth O. Eikenberry, Attorney General,* and *John M. Gray, Assistant,* for appellant.

*William L. Weigand, Jr., Richard M. Wilson,* and *Lyon, Beaulaurier, Weigand, Suko & Gustafson,* for respondent.

WORSWICK, J.—The Department of Revenue appeals a superior court determination that Fidelity Title Company should be classified, for business and occupation tax purposes, as an abstract, title insurance and escrow business (WAC 458–20–156) instead of as an insurance agent (WAC 458–20–164). The latter classification would result in a tax more than twice as much as would the former. We affirm.

This litigation began when the Department assessed Fidelity for a deficiency following an audit. Fidelity paid the tax and appealed directly to the Superior Court pursuant to RCW 82.32.180, rather than to the Board of Tax Appeals pursuant to RCW 82.03.190. The evidence developed during the ensuing trial de novo developed the following undisputed facts.

What is commonly known as the "title business" is conducted in this state by two kinds of entity: one, an independent, usually locally owned, company that owns a "title plant"[1] and performs the abstracting (title records research) necessary to produce title reports and the product known as title insurance; the other, a branch office of a title

---

[1] A "title plant" means the materials, including tract indices and other records, necessary to accurate title searches. *See* RCW 48.29.020(2).

insurer, which also owns a "title plant", and does exactly the same work as an independent company and produces the same products. Both entities usually provide other services too, such as furnishing limited liability title reports and escrow arrangements.

Only a title insurer has legal authority to underwrite title insurance policies. An independent title company issues policies as agent for a qualified title insurer, whereas an insurer's branch office issues them for its parent company.

To receive a certificate of authority from the insurance commissioner, a title insurer must comply with RCW 48.29.020.[2] In practice, the requirement that the insurer own a title plant (RCW 48.29.020(2)) is satisfied if the insurer does business through an agent who owns such a plant. *See* RCW 48.29.160. If business is done this way, the insurer need only satisfy the financial responsibility requirement (RCW 48.29.020(3)) to qualify for its certificate. Insurer–agent arrangements thus involve marriages of a sort between the agent's title plant and personnel and the insurer's financial—and therefore risk underwriting—capacity.

Title insurance is unlike any other insurance. Insurers in other lines cannot control the risk beyond being careful in the selection of insureds. However, title companies do control the risk; they attempt to eliminate it by the work they do in determining the state of a title. Title insurance is not so much the assumption of an uncontrollable risk as it is a guaranty that the title company's work is accurate and therefore free of risk. Probably because of this difference, the insurance commissioner treats title insurance agencies

---

[2]RCW 48.29.020 provides as follows:

"Qualifications—Guaranty fund deposit. A title insurer shall not be entitled to have a certificate of authority unless it otherwise qualifies therefor, nor unless:

"(1) It is a stock corporation.

"(2) It owns and maintains a complete set of tract indexes of the county in which its principal office within this state is located.

"(3) It deposits and keeps on deposit with the commissioner a guaranty fund in amount as set forth in RCW 48.29.030 and comprised of cash or public obligations as specified in RCW 48.13.040."

differently from other insurance agencies, paying them little attention after an initial inspection determines that they are equipped and competent to do business.

Abstracting constitutes 90 percent or more of the work necessary to the final product, be it title insurance or simply a title report. If insurance is issued, an agent remits to the insurer 10 to 12 percent of the fee collected from the customer and keeps the rest. This remittance is often referred to as an underwriting fee, rather than as a premium. Historically, about 3 percent of this remittance is paid out for losses. Should a loss occur, the agent, pursuant to its contract with the insurer, is responsible for the full amount up to a ceiling and thereafter shares the loss with the insurer up to another ceiling, above which the insurer pays the loss to the policy limits.

The Department contends that Fidelity is an insurance agent and should be classified under WAC 458-20-164,[3] because it is not legally qualified to underwrite insurance policies and is licensed only as an agent by the insurance commissioner. Fidelity contends that it should be classified as an abstract, title insurance and escrow business under WAC 458-20-156,[4] because its business is identical with that of a title insurer's branch office. The trial court agreed

---

[3]WAC 458-20-164 provides, in relevant part: "Insurance agents, brokers and solicitors. The words 'agent,' 'broker,' and 'solicitor,' as used herein mean respectively, a person licensed as such under the provisions of chapter 48.17 RCW.

"BUSINESS AND OCCUPATION TAX

"Every person acting in the capacity of agent, broker, or solicitor is presumed to be engaging in business and is taxable under the insurance agents and brokers classification upon the gross income of the business unless such person is a bona fide employee. The burden is upon such person to establish the fact of his status as an employee (See WAC 458-20-105 Employees.) Gross income of the business is determined by the amount of gross commissions received or retained, not by the gross premiums paid by the insured.

"The term 'gross income of the business' includes gross income from commissions, fees or other emoluments however designated which the agent, broker, or solicitor receives or becomes entitled to receive but does not include amounts held in trust for the insurer or the client. (See also WAC 458-20-111—Advances and reimbursements.)"

[4]WAC 458-20-156 provides, in relevant part:

with Fidelity and so do we.

■■ Two misconceptions must be cleared away at the outset. First, the parties have treated this throughout as a contest over which of the two WAC provisions controls; they have cited little to the statutes and even less to the cases. The WAC provisions control nothing. The Department has authority to adopt only procedural rules; it cannot enact or amend the law by making rules. RCW 82.32.300; *Coast Pac. Trading, Inc. v. Department of Rev.*, 105 Wn.2d 912, 917, 719 P.2d 541 (1986). *See also Downtown Traffic Planning Comm. v. Royer*, 26 Wn. App. 156, 165, 612 P.2d 430 (1980). Second, the Department asserts that the form of a business activity, rather than its substance, controls tax classifications; it bases its assertion on *Sonitrol Northwest, Inc. v. Seattle*, 84 Wn.2d 588, 528 P.2d 474 (1974). The Department misreads *Sonitrol*, which only holds that differences in the *functional method* of doing business afford a valid basis for different classifications. Here, there is no difference whatever in the functional method employed by the two types of entity engaged in the title business. The difference, if any, is in form, and form is

---

"Abstract, title insurance and escrow businesses. The gross receipts of 'abstract,' 'title insurance' and 'escrow' businesses include all service charges representing an abstract fee, a charge for a title insurance fee or premium, or an escrow fee or service charge received by 'escrow agents.'

"The term 'escrow' means any transaction wherein any person or persons, for the purpose of effecting and closing the sale, purchase, exchange, transfer, encumbrance, or lease of real or personal property to another person or persons, delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by such third person until the happening of a specified event or the performance of a prescribed condition or conditions, when it is then to be delivered by such third person, in compliance with instructions under which he is to act, to a grantee, grantor, promisee, promisor, obligee, obligor, lessee, lessor, bailee, bailor, or any agent or employee thereof.

"'Escrow agent' means any sole proprietorship, firm, association, partnership, or corporation engaged in the business of performing for compensation the duties of the third person referred to in the foregoing definition.

"BUSINESS AND OCCUPATION TAX

"Abstract, title insurance and escrow businesses are taxable under the classification retailing on gross receipts from fees or premiums charged to consumers for abstract, title insurance or escrow services."

not to be exalted over substance in tax classifications. *Time Oil Co. v. State,* 79 Wn.2d 143, 146, 483 P.2d 628 (1971).

The real issue is not how the insurance commissioner licenses Fidelity, but how the Legislature intended to classify Fidelity for B & O tax purposes. We hold that Fidelity must be classified as an abstract, title insurance and escrow business.

Most insurers are exempt from B & O tax pursuant to RCW 82.04.320 because they pay a premium tax under RCW 48.14.020, which reads, in relevant part:

> Premium taxes. (1) Subject to other provisions of this chapter, each authorized insurer *except title insurers* shall on or before the first day of March of each year pay to the state treasurer through the commissioner's officer a tax on premiums. . . .

(Italics ours.) Notwithstanding the title insurer exception to the premium tax, no other statute imposes a B & O tax on title insurers as a separate class. Instead, RCW 82.04-.050, a lengthy section titled "Sale at retail, retail sale", operates to classify title insurance *businesses,* including title insurers, for B & O tax purposes. It provides in part as follows:

> (3) The term "sale at retail" or "retail sale" shall include the sale of or charge made for personal business or professional services including amounts designated as interest, rents, fees, admission, and other service emoluments however designated, received by persons engaging in the following business activities: (a) Amusement and recreation businesses including but not limited to golf, pool, billiards, skating, bowling, ski lifts and tows and others; (b) *abstract, title insurance and escrow businesses;* (c) credit bureau businesses; (d) automobile parking and storage garage businesses.

(Italics ours.) This section, obviously the statutory basis for WAC 458–20–156, reflects the Legislature's recognition of the uniqueness of the title business, distinguishes title insurance from other forms of insurance, and lumps it in one class with other segments of the title business. The actual rate classification is accomplished by RCW 82.04-

.250, applying to all retailers.

Without more, it seems obvious that Fidelity should be classified under RCW 82.04.050(3), as its enterprise appears to fit perfectly into this special retailing classification. However, RCW 82.04.260(14) provides, in part:

> (14) Upon every person engaging within this state *as an insurance agent, insurance broker, or insurance solicitor* licensed under chapter 48.17 RCW; as to such persons, the amount of *the tax with respect to such licensed activities* shall be equal to the gross income of such business multiplied by the rate of one percent.

(Italics ours.) This section, which affords the statutory basis for WAC 458–20–164, is the only arguable authority for the Department's position. That position, however, is flawed for two reasons. First, RCW 82.04.260(14) cannot be considered in isolation, but must be read together with all statutes bearing on the issue. Second, the Department has over-looked a fundamental principle applicable to all B & O tax classifications.

██ As to the statutes, we note initially that both in promulgating WAC sections and in the classification at issue, the Department has failed to recognize that a given business may involve more than one classifiable activity. Neither of the WAC sections previously referred to provides for the allocation of different B & O tax rates to different segments of a business, and we find no other WAC section that does, although the Legislature has made it clear that this must be done. RCW 82.04.260(14), referred to above, plainly states that the tax rate for insurance agents is to be applied only to gross income from an agent's, broker's or solicitor's activities *as such—i.e.,* in practical application, to commissions, as a percentage of premiums, for selling insurance policies. This legislative policy requiring application of a given rate only to a specific activity is made generally applicable by RCW 82.04.440(1).[5]

---

[5]RCW 82.04.440 provides, in relevant part:

"Persons taxable on multiple activities. (1) Except as provided in subsections (2) and (3) of this section, every person engaged in activities which are within the

Nevertheless, the Department asserts that the entirety of Fidelity's gross income is taxable at the insurance agent rate, although only a small portion of its income is paid over to the insurer as "premium", no portion of its income is measured as a percentage of "premium", and its salesmanship is devoted to producing business in the completion of which it does virtually all of the work.

A careful reading of other relevant statutes shows that the Legislature was well aware of the distinctive nature of the title business and intended to treat it accordingly. RCW 48.14.020, referred to above, imposes a premium tax on *insurers,* not on *insurance companies,* and then exempts *title insurers,* not *title insurance companies.* However, RCW 82.04.050(3) does not then classify *title insurers* as retailers, but so classifies *abstract, title insurance and escrow businesses,* a phrase precisely descriptive of both kinds of entity engaged in the unique endeavor known as the title business. Finally, when RCW 82.04.260(14), the insurance agent classification statute, is read in conjunction with the definitions in RCW 48.17, it becomes apparent that the Legislature did not intend that title insurance agents be classified as insurance agents for B & O tax purposes.

RCW 48.17.010 defines "agent" as

> . . . any person appointed by an insurer to solicit applications for insurance on its behalf. If authorized so to do, an agent may effectuate insurance contracts. An agent may collect premiums on insurances so applied for or effectuated.[6]

This definition does not fit what Fidelity does. Fidelity generates business for its own account. It places the relatively small insurance component with an insurer qualified,

---

purview of the provisions of two or more of sections RCW 82.04.230 to 82.04.290, inclusive, shall be taxable under each paragraph applicable to the activities engaged in."

The stated exceptions do not apply here.

[6]A "broker" is one who places insurance with an insurer for an insured. RCW 48.17.020. A "solicitor" is a representative of an agent or a broker. RCW 48.17.030.

by reason of compliance with financial requirements, to underwrite the slight risk that Fidelity has not properly done its work.

The Department has also overlooked the cases establishing the fundamental principle that the imposition of B & O tax liability must be as equitable as possible. *Reynolds Metals Co. v. State,* 65 Wn.2d 882, 400 P.2d 310, *appeal dismissed,* 382 U.S. 160 (1965); *Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 278 P.2d 305 (1954). This principle is not served by a classification that imposes a tax on Fidelity more than twice that imposed on an identical business and that would classify as insurance agent "commission" income a monetary amount that is some 900 percent of the insurance "premium".

Fidelity contends that its classification by the Department, if valid under Washington statutes and rules, would constitute an unconstitutional denial of equal protection of the laws. We do not reach this contention as we are satisfied that the Department's classification is neither valid under Washington statutes nor consistent with Washington law requiring the equitable application of the B & O tax.

Affirmed.

REED, C.J., and ALEXANDER, J., concur.

Review denied by Supreme Court March 1, 1988.