27 P.3d 604 (2001)
144 Wash.2d 300
FIRST AMERICAN TITLE INSURANCE COMPANY, Respondent,
v.
STATE of Washington, DEPARTMENT OF REVENUE, Petitioner.
No. 69218-1.
Supreme Court of Washington, En Banc.
Argued November 28, 2000.
Decided July 26, 2001.
*605 Foster, Pepper & Shefelman, Camden Michael Hall, Seattle, Amicus Curiae on Behalf of Washington Land Title Association.
Honorable Christine Gregoire, Attorney General, Donald F. Cofer, Asst., Olympia, for Petitioner.
Lane, Powell, Spears & Lubersky, George Carl Mastrodonato, Kathleen Dell Benedict, Olympia, Michael Barr King, Seattle, for Respondent.
JOHNSON, J.
This case concerns the appropriate gross income of a title insurer for purposes of Washington's business and occupation (B & O) tax, Title 82 RCW, when an underwritten title company (UTC) sells a title insurance policy on behalf of that insurer. The question is whether the title insurer pays B & O tax on the entire premium, or only on that portion of the premium related to insurance. The Court of Appeals held in favor of the title insurer. We affirm.

FACTS
This case was submitted to the trial court and appealed on agreed stipulated facts. Briefly, First American Title Insurance Company (First American) is a California corporation licensed to do business in Washington as a title insurer. First American operates in Washington through its own branch offices (where First American performs title searches and issues title insurance policies) and also in association with various UTCs (where First American provides the title insurance policies only, and the UTC provides the title search, a process known as "abstracting," that culminates in a preliminary title report).
The consumers in the relevant transactions purchased preliminary title reports and title insurance from the UTCs. Under contract with First American, the UTCs collected the premiums from the consumers, retained a portion as gross income for abstracting services, and paid the appropriate B & O tax. The remaining portion was remitted to First American, which reported it as gross income for title insurance and paid the appropriate B & O tax.
First American was audited by the Department of Revenue (Department) for the period of January 1, 1992 through December 31, 1995. As a result of its audit, the Department issued First American a B & O tax and interest assessment in the amount of $346,012. This tax was based on the entire premium paid by consumers for both the abstracting services and title insurance and duplicated the B & O tax already paid by the UTCs.
First American paid the amount assessed by the Department and sued for a refund of $267,370, plus the interest paid on this amount. The superior court denied relief, *606 reasoning the relation between First American and the UTCs was similar to the relation between an end retailer and a wholesaler. Based on this, the trial court agreed with the Department that First American owed tax on the entire value of the transaction without regard for the services of the UTCs.
The Court of Appeals reversed, concluding the UTCs and First American were distinct retailers with the UTCs providing abstracting services and First American providing title insurance. First Am. Title Ins. Co. v. Dep't of Revenue, 98 Wash.App. 882, 991 P.2d 120 (2000). The Court of Appeals determined the Department was not due duplicate tax payments on the products of the UTCs. The court ruled First American owed tax on the payment it received for title insurance, while the UTCs were liable for tax on the payment for the preliminary title report. The Department petitioned for review, which we granted.

ANALYSIS
Insofar as this case turns on a question of law, we review it de novo. J.R. Simplot, Inc. v. Knight, 139 Wash.2d 534, 538, 988 P.2d 955 (1999). We generally defer to the statutory interpretation of the agency charged with implementing a statutory scheme. Impecoven v. Dep't of Revenue, 120 Wash.2d 357, 363, 841 P.2d 752 (1992). However, any doubt as to the meaning of a tax statute is construed against the taxing power. Duwamish Warehouse Co. v. Hoppe, 102 Wash.2d 249, 254, 684 P.2d 703 (1984). Substance rather than form should be used to assess tax classifications. See Time Oil Co. v. State, 79 Wash.2d 143, 146, 483 P.2d 628 (1971).
The statutes governing these transactions provide relevant guidance in our analysis. The "sales at retail" of a title insurer are defined under RCW 82.04.050(3). B & O tax is based on the business' "gross proceeds of sales." RCW 82.04.250(1). "Gross proceeds of sales" means the "value proceeding or accruing" from a sale, without deduction for costs or expenses. RCW 82.04.070. "Value proceeding or accruing" is the "consideration... actually received or accrued." RCW 82.04.090.
Requiring First American to pay B & O tax under two differing tax schemes for the same commercial transaction appears inequitable on its face and inconsistent with the taxation statutes. Had First American provided both title abstracting services and title insurance to the consumers through its branch offices, the tax assessment would not be in dispute. The tax would be assessed on the entire premium paid by the consumer. However, the total assessment was nearly doubled when a UTC prepared the preliminary title report and sold both its title abstracting services and First American's title insurance as a bundled package to the consumer in a single transaction. This result might be appropriate if the UTCs sold First American's product only. In this case, however, the proceeds of the business arrangement, described in the contracts between First American and the UTCs, recognize the activities of the title insurer and the UTCs as separate business services.[1]
The statutory scheme similarly acknowledges the unique commercial relationship involved in the title insurance business. See RCW 82.04.050(3)(b). This scheme does not support a duplicate B & O assessment when title abstracting services and title insurance are bundled. Each component of the bundled package constitutes "sales at retail" within the meaning of RCW 82.04.050(3). The amount paid by the consumer constitutes the "gross proceeds of sales" under RCW 82.04.070. Title insurers and UTCs are separate and distinct retail sellers under RCW 82.04.050(3)(b). The title insurer provides the title insurance. The UTCs provide the abstracting services to create the preliminary title report. Title abstracting services are *607 recognized as a retail service independent of the title insurance under RCW 82.04.050(3)(b). The statutes not only recognize the separate character of each entity, but also do so in the same subsection.
The Court of Appeals recognized that UTCs are distinguishable from insurance brokers or agents in Fidelity Title Co. v. Department of Revenue, 49 Wash.App. 662, 745 P.2d 530 (1987). The Court of Appeals stated:
[The UTC] generates business for its own account. It places the relatively small insurance component with an insurer qualified, by reason of compliance with financial requirements, to underwrite the slight risk that [the UTC] has not properly done its work.
Fid. Title Co., 49 Wash.App. at 669-70, 745 P.2d 530. We agree with this characterization and recognize that a UTC is not a mere insurance agent or broker, but rather generates business for its own account, namely selling abstracting services that qualify as "sales at retail" under RCW 82.04.050(3). Because a UTC sells its own service in addition to insurance, we conclude in this situation First American is not subject to tax liability for the sale of a UTC's service and should pay tax on the portion of the premium allocated to it under its business agreement with the UTC.
This conclusion is not affected by Impecoven, 120 Wash.2d 357, 841 P.2d 752.[2] Under Impecoven, each B & O taxpayer pays tax based on the value of the business done by that taxpayer, without any reference to the B & O tax liability of any other related taxpayer. Impecoven, 120 Wash.2d at 363-64, 841 P.2d 752. Applying Impecoven here means only that First American pays B & O tax on the insurance product it provides and sells, but not on the preliminary title report it does not provide and sell.[3]
The UTCs are compensated for the most significant part of the title insurance processthe search, examination, and preparation of the report which forms the basis for insurance. The title insurer is compensated for assuming the risk the title search and examination is deficient. Where the business acts only as a pass-through for funds, the pass-through funds are not included as income. Walthew, Warner, Keefe, Arron, Costello & Thompson v. Dep't of Revenue, 103 Wash.2d 183, 188, 691 P.2d 559 (1984). Here, the UTCs merely act as a pass-through entity for the proportional value of the product contributed by the insurer, i.e., 10 percent of the gross proceeds from sale, which is the value of the insurance policy.
We affirm the Court of Appeals and hold First American is entitled to a refund of the taxes paid, plus interest. We remand the case to the trial court for further proceedings.
ALEXANDER, C.J., SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, JJ., and GUY, J. Pro Tem., concur.
NOTES
[1] The Department argues the relationship between First American and the various UTCs is that of a principal to its agents. We do not rely on principles of agency to determine the result in these unique circumstances because the statutory scheme dictates a different result.
[2] Impecoven involved the B & O tax assessed against two insurance agents on their shares of insurance commissions received from the insurance agent/broker with whom they were affiliated. Unlike this case, Impecoven involved only one recognized product constituting "sales at retail." The respective commissions received by both the affiliated insurance agent and the appointment agent under whom the affiliated agent sold insurance were subject to the B & O tax under RCW 82.04.220.
[3] In this case, the pyramid structure of the B & O tax has no application because we find only one transaction involving two components occurs. There simply is not a sequential set of transactions upon which to apply the tax pyramid.