# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| EXPRESS SCRIPTS, INC., | No. 50348-4-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Express Scripts Inc. (ESI), a pharmacy benefit management company (PBM), appeals the superior court's order granting summary judgment in favor of the Department of Revenue. ESI argues that it should not be subject to Washington's business and occupation (B&O) tax[1] for payments it receives from clients for the value of prescription drugs because that value qualifies as "pass-through" funds. In the published portion of this opinion, we hold that the portion of payments ESI receives from its clients representing the value of the prescription drugs does not qualify as "pass-through" funds and is subject to the B&O tax.

In the unpublished portion of this opinion, we reject ESI's remaining arguments. Accordingly, we affirm.

---

[1] Ch. 82.04 RCW.

FACTS

I. EXPRESS SCRIPTS

ESI is a PBM company headquartered in Missouri. ESI's clients include health maintenance organizations, health insurers, third-party administrators, employers, union-sponsored benefit plans, and government health programs. These clients hire ESI, in relevant part, to manage the clients' prescription drug benefit programs. ESI's services include pharmacy network management, claims processing, mail order and specialty mail order pharmaceuticals through ESI affiliates, formulary development, and rebate management.

ESI negotiates with pharmaceutical manufacturers to obtain rebates and other payments to ESI based on utilization of the pharmaceutical manufacturers' products by ESI's clients' members. Those rebates and fees are negotiated and set forth in contracts independently negotiated and entered into between ESI and the pharmaceutical manufacturers. Pursuant to separate contracts between ESI and its clients, ESI generally pays a portion of the rebates it receives to the clients, and may also guarantee a minimum rebate per prescription dispensed to the clients' members. The rebate portion that the clients receive varies according to each client's contract with ESI.

ESI contracts with independent third-party retail pharmacies to provide prescription drugs to ESI's clients' members. ESI negotiates with the pharmacies to determine the price at which the pharmacies will provide prescription drugs to the members. When a member presents his or her identification card at a network pharmacy, the network pharmacist sends the specified member and prescription information through ESI's systems which process the claim and respond back to the pharmacy. ESI confirms the member's eligibility for benefits and the conditions or limitations of coverage. If a member's claim is accepted, ESI confirms to the pharmacy that it will receive

payment for the drug dispensed according to the agreement entered into between ESI and the pharmacy.

Periodically, ESI invoices its clients. These invoices include amounts related to the prescription drugs provided by the pharmacies to the clients' members, and administrative and dispensing fees due under the clients' contracts with ESI.

## II. DEPARTMENT'S AUDITS OF ESI

In 2007, the Department audited ESI's corporate subsidiary ESI Mail Pharmacy, Inc. for the period of January 2001 through December 2006. The resulting audit report stated:

> Express Scripts also receives a dispensing fee for the costs of providing the pharmacy benefit service. WAC 458-20-194 explains the application of various business and occupation taxes to persons doing business inside and outside of Washington State. Tax is not due upon any part of the gross income received for services incidentally rendered to persons in Washington by a person who is not domiciled or does not maintain a place of business in Washington. Because Express Scripts does not have physical presence in the state and all of the activities associated with this fee occur outside of Washington, none of this fee would be subject to the B&O tax.

Clerk's Papers (CP) at 619-20.

Several years later, in 2011, the Department audited ESI for the tax period of January 1, 2007 through December 31, 2010. As a result of the audit, the Department issued a tax assessment of $11,794,092.00 plus interest and penalties for a total obligation of $14,190,659.00.

ESI paid the assessed amount and sued for a refund under RCW 82.32.180. ESI also sought to invalidate a Department administrative rule, former WAC 458-20-194 (2006) (Rule 194 (2006)) under the Administrative Procedure Act (APA).[2] The superior court addressed ESI's claims in

---

[2] Ch. 34.05 RCW.

3

two phases: a rule challenge under the APA and a tax refund action under RCW 82.32.180. *See* CP at 303.

### III. PROCEDURAL FACTS

On January 23, 2017, the Department moved for summary judgment of all of ESI's claims. Two days later, the Department moved for partial summary judgment on the issue of whether ESI had a physical presence in Washington during the audit period, such that it was subject to the B&O tax. The superior court granted the Department's motion for partial summary judgment on the issue of physical presence on March 10.

On March 24, the superior court entered an order granting the Department's motion for summary judgment on all remaining issues except "the 'pass-through' issue." CP at 949. The superior court ruled that it would take the pass-through issue under advisement and consider additional briefing on the issue. After reviewing supplemental briefing from both parties, the superior court entered an order granting the Department's motion for summary judgment in its entirety on April 14, 2017.

ESI appeals.

### ANALYSIS

### I. "PASS-THROUGH" FUNDS

ESI argues that the superior court erred by granting the Department's motion for summary judgment because payments from its clients for the value of the prescription drugs, or "ingredients," should be exempted from the B&O tax assessment because those amounts are merely "pass-through" funds moving from its clients, through ESI, to the pharmacies. Br. of Appellant 25-26. The Department disagrees and argues that because ESI takes on the obligation

to pay retail pharmacies for the prescription drugs as part of its business model, and ESI independently negotiates payment of and recuperation for the value of the prescription drugs with both the retail pharmacies and ESI's clients, it is subject to the B&O tax on the money it receives from its clients. We agree with the Department.

We review summary judgment orders de novo, performing the same inquiry as the superior court. *Washington Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

B&O taxes are assessed on every person "for the act or privilege of engaging in business activities." RCW 82.04.220(1). The tax is assessed on the "gross income of the business," which is defined as "the value proceeding or accruing by reason of the transaction of the business engaged in" without deductions for business expenses. RCW 82.04.080. Gross income includes "compensation for the rendition of services." RCW 82.04.080. "Value proceeding or accruing" is consideration "actually received or accrued." RCW 82.04.090. In a tax refund action, the taxpayer seeking the refund has the burden of establishing that the Department incorrectly assessed the tax and that the taxpayer is entitled to a refund. RCW 82.32.180.

The B&O tax does not apply to amounts that "merely 'pass through' a business in its capacity as an agent." *Washington Imaging*, 171 Wn.2d at 560 (quoting *City of Tacoma v. William Rogers Co.*, 148 Wn.2d 169, 175, 60 P.3d 79 (2002)). Generally, the only way funds qualify for "pass-through" treatment is under WAC 458-22-111 (Rule 111). *Washington Imaging*, 171 Wn.2d at 559. "Rule 111 excludes from the definition of 'gross income' certain 'advances' and 'reimbursements' for which the taxpayer assumes solely agent liability." *Rho Co., v. Dep't of*

*Revenue*, 113 Wn.2d 561, 567, 782 P.2d 986 (1989). B&O tax jurisprudence has routinely required evidence of an agency relationship in order to consider funds as "pass-through" payments. *See, e.g., Walthew, Warner, Keefe, Arron, Costello & Thompson v. Dep't of Revenue*, 103 Wn.2d 183, 189, 691 P.2d 559 (1984) (compensation qualified as "pass-through funds" where law firm was "acting solely as agent for the client in advancing the type of litigation expense involved here").

Despite arguing that the payments ESI receives from its clients for the value of the prescription drugs qualify as "pass-through" payments, ESI does not contend that Rule 111 applies. Indeed, ESI acknowledges that no agency relationship exists between ESI and its clients. Instead, ESI argues that *First American Title Ins. Co. v. Dep't of Revenue*, 144 Wn.2d 300, 27 P.3d 604 (2001) created an alternative basis to achieve "pass-through" status. However, ESI ascribes undue weight to the *First American* court's use of the term "pass-through."

*First American* involved a title insurance company that operated with several underwritten title companies (UTCs) to provide a bundle of services to consumers. *First American*, 144 Wn.2d at 301-02. The bundled services included title insurance provided by First American and title abstracting services provided by the UTCs. *First American*, 144 Wn.2d at 302. Our Supreme Court's decision in *First American* relied heavily on the unique nature of the business of UTCs and title insurance companies. *See First American*, 144 Wn.2d at 304-05. The court did not mention "pass-through funds" until the very end of its opinion when it concluded "the UTCs merely act as a pass-through entity for the proportional value of the product contributed by the insurer, i.e., 10 percent of the gross proceeds from sale, which is the value of the insurance policy." *First American*, 144 Wn.2d at 305-06. The court did not explain what "pass-through funds" meant or outline any standards to be applied in future cases. We hold that the *First American* court's use

of the term "pass-through funds" was dicta and did not create an alternative means of achieving pass-through status for B&O tax purposes. Thus, we analyze ESI's pass-through argument under Rule 111.

ESI's PBM services include managing all of its clients' drug benefit programs, including the obligation to pay retail pharmacies for drugs dispensed to plan members. Pursuant to its contracts with retail pharmacies, ESI is solely responsible for payment to the pharmacies for the drugs dispensed to plan members and assumes the credit risk of ESI's clients' ability to pay for the drugs. ESI negotiates the payment it receives from its clients for the value of the prescription drugs and separately negotiates how much it will pay retail pharmacies to settle its obligation to them. As such, ESI does not act as a mere pass-through agent for its clients. Rather, the compensation ESI receives from its clients for the value of the prescription drugs is an integral part of ESI's business model for its PBM services.

ESI analogizes its business to that of credit card processors, who "are not subject to B&O tax on amounts passed through to merchants." Br. of Appellant 27. But ESI and other PBM companies differ from credit card processors because credit card processors are not parties to the contractual agreement between bank, cardholder, and merchant, whereas PBM companies independently negotiate prices with both clients and pharmacies.

Credit card processors' activities are limited to processing the credit card payment, for which it receives gross income in the form of a merchant discount fee. *See*, Br. of Appellant, App. A, (Excise Tax Advisory 3204.2017). The funds forwarded by the issuing bank to the merchant in settlement of the cardholder's debt obligation are unrelated to the credit card processor's business activity.

7

In contrast, the portion of ESI's payment from its clients representing the value of the prescription drugs is part and parcel of the amount ESI contracted to receive in compensation for its PBM services. Under its contracts, ESI assumes the obligation to pay retail pharmacies for the prescription drugs dispensed to its clients' members, and ESI retains the right to realize a profit on the difference between the amount it pays pharmacies and the amount it charges clients for its services. The relationship between pharmacies, ESI, and ESI's clients is significantly different from the relationship between issuing banks, credit card processors, and merchants. Thus, ESI's analogy fails.

We hold that the portion of payments ESI receives from its clients representing the value of the prescription drugs does not qualify as "pass-through" funds and is subject to the B&O tax. Accordingly, we affirm the superior court's order granting summary judgment in favor of the Department.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ESI also argues that (1) if the value of the prescription drugs is subject to the B&O tax, ESI should be taxed as a wholesaler or retailer as opposed to a service provider, (2) ESI is entitled to relief from the B&O tax because the superior court improperly invalidated only parts of the 2006 version of Rule 194 rather than the entire rule, (3) ESI properly apportioned zero gross income to Washington for periods prior to June 1, 2010, and (4) ESI is also entitled to relief from the B&O

tax, interest, and penalties from January 1, 2007 to May 31, 2010, under (a) Washington's Taxpayer's Rights and Responsibilities Act[3] and/or (b) common law equitable estoppel.

We hold that the Department correctly imposed B&O tax on ESI as a service provider, and ESI remains subject to the B&O tax regardless of whether the 2006 version of Rule 194 is invalid in its entirety. We further hold that the Department's apportionment computation was not unreasonable, excessive, or arbitrarily and capriciously achieved, and ESI is not entitled to relief from the B&O tax, interest, and penalties under either the Taxpayer's Rights and Responsibilities Act or common law equitable estoppel.

## ADDITIONAL FACTS

In its APA challenge, ESI argued that former Rule 194 as amended in 2006 (Rule 194 (2006)) exceeded the Department's statutory authority by removing the requirement that a taxpayer have a place of business in Washington in order to be subject to the B&O tax. ESI also argued that Rule 194 (2006) was arbitrary and capricious. As relief, ESI sought to be held to the pre-2006 Rule 194 standard to determine whether it was subject to the B&O tax. The superior court held a hearing on the APA claim on February 19, 2016.

A.    B&O TAX & RULE 194

In making its determination, the superior court focused on the pertinent portions of RCW 82.04 and Rule 194 both before and after the 2006 amendment to Rule 194. RCW 82.04.220 imposes the B&O tax, and RCW 82.04.460 pertains to how entities taxable in both Washington

---

[3] Ch. 82.32A.

and another state may apportion their income. Prior to 2010, former RCW 82.04.460 (2004) provided in part:

> Any person rendering services taxable under RCW 82.04.290 . . . and *maintaining places of business* both within and without this state which contribute to the rendition of such services shall, for the purpose of computing tax liability under RCW 82.04.290 . . . , apportion to this state that portion of the person's gross income which is derived from services rendered within this state.

(Emphasis added). The Department implemented RCW 82.04.460 through the promulgation of Rule 194.

> Prior to the 2006 amendment, Rule 194 provided in relevant part:

> > When the business involves a transaction taxable under the classification service and other business activities, the tax does not apply upon any part of the gross income received for services incidentally rendered to persons in this state by a person who *does not maintain a place of business in this state* and who is not domiciled herein.
> >
> > . . . .
> >
> > Persons engaged in a business taxable under the service and other business activities classification and who *maintain places of business* both inside and outside this state . . . shall apportion to this state that portion of gross income derived from services rendered by them in this state . . . .
> >
> > For purposes of apportionment under RCW 82.04.460 and this rule the term "place of business" generally means a location at which regular business of the taxpayer is conducted and which is either owned by the taxpayer or over which the taxpayer exercises legal dominion and control.

Former Rule 194 (1983) (emphasis added).

Despite the fact that the legislature had not amended the relevant statutes, the Department significantly amended Rule 194 in 2006. The 2006 amendment repealed the aforementioned language of Rule 194 and replaced it, in part, with the following:

> **Place of business – minimum presence necessary for tax**. . . . A place of business exists in a state when a taxpayer engages in activities in the state that are sufficient to create nexus. Nexus is that minimum level of business activity or connection

> with the state of Washington which subjects the business to the taxing jurisdiction of this state. Nexus is created when a taxpayer is engaged in activities in the state, either directly or through a representative, for the purpose of performing a business activity. It is not necessary that a taxpayer have a permanent place of business within a state to create nexus.

Former Rule 194 (2006).

Former RCW 82.04.220 (1961), the version of the statute in effect at the time of the 2006 amendment to Rule 194, provided:

> There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.

The legislature did not amend RCW 82.04.220 or .460 until 2010, when the statutes were amended to read:

> There is levied and collected from every person that has a *substantial nexus* with this state a tax for the act or privilege of engaging in business activities. The tax is measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.
>
> Except as otherwise provided in this section, any person earning apportionable income taxable under this chapter and also taxable in another state must, for the purpose of computing tax liability under this chapter, apportion to this state . . . that portion of the person's apportionable income derived from business activities performed within this state.

Former RCW 82.04.220 (2010) (emphasis added); former RCW 82.04.460 (2010).

B.     SUPERIOR COURT'S RULING RE: APA RULE CHALLENGE

On June 10, 2016, the superior court announced its ruling that Rule 194 (2006) exceeded the Department's statutory authority and was invalid because it was arbitrary and capricious. In light of its ruling, the superior court asked the parties whether portions of Rule 194 (2006) could

11

survive. Both parties proposed findings and conclusions, and ultimately the superior court entered the Department's revised order with its own additional changes.

In its order, the superior court concluded that at the time of the 2006 amendment to Rule 194, the statutory reach of the B&O tax did not extend to out-of-state businesses who did not have a physical presence in Washington. The court concluded that the 2006 amendment changed the way the rule articulated whether a business was subject to the B&O tax. In so doing, the amendment expanded the reach of the tax, first, by defining "place of business" by reference to nexus not physical location, and second, by removing the place of business requirement from the prior version of the rule. CP at 316. The superior court noted that at the time of the amendment, the statutes imposing the B&O tax applied only to those business who had a physical presence in Washington, and thus, the 2006 amendment to Rule 194 exceeded the Department's statutory authority. The superior court also concluded that the portions of the 2006 amendment expanding B&O taxation to businesses with a nexus to Washington were also arbitrary and capricious.

The superior court ultimately granted ESI's challenge to the 2006 amendment to Rule 194:

> [O]nly with respect to those parts of the Rule . . . that are inconsistent with the statutory "physical presence" requirement implicitly included in the pre-2010 version of RCW 82.04.220. Physical presence was a statutory requirement under RCW 82.04.220 prior to the 2010 amendment to that statute, and Express Scripts will be immune from the Washington tax during the tax periods at issue if it can show that it did not have any physical presence in Washington during that January 2007 through May 2010 period.

CP at 317. Although the superior court ultimately invalidated only portions of Rule 194 (2006), it effectively granted ESI's requested relief by ordering that the taxation of ESI's revenues be governed by the pre-2006 version of Rule 194.

ADDITIONAL ANALYSIS

II. TAX CATEGORY

ESI argues that if it is subject to the B&O tax for the value of the prescription drugs, it should be taxed as a wholesaler or retailer as opposed to as a service provider. Notably, ESI does not contend that it sells prescription drugs; ESI's argument is based on its contention that by subjecting ESI to the B&O tax for payments from its clients, including the value of the prescription drugs, the Department *treats* ESI as if it were selling prescription drugs. We disagree.

How the B&O tax statutes apply to ESI in this case is a question of law that we review de novo. *Washington Imaging*, 171 Wn.2d at 555. We disagree that the Department is treating ESI as if it were selling prescription drugs. Rather, the Department assessed ESI's B&O tax on the full amount of compensation ESI received from its clients in exchange for ESI's PBM services. Those services include managing the clients' drug benefit programs. As part of its PBM services, ESI assumes the obligation of paying retail pharmacies for the prescription drugs dispensed to ESI's clients' plan members. As previously mentioned, ESI independently contracts with its clients to determine the amount that the client will pay ESI for its services. These payments from clients, including the amount representing the value of the prescription drugs sold by retail pharmacies, represents ESI's gross income, or "the value proceeding or accruing by reason of the transaction of the business engaged in." RCW 82.04.080(1).

Contrary to ESI's contention on appeal, the Department is not assessing the B&O tax on ESI's "gross receipts from the sale of prescription drugs." Br. of Appellant 31. Rather, the Department is properly assessing the B&O tax on ESI's gross income. We hold that the Department correctly imposed the B&O tax on ESI as a service provider.

## III. RULE 194

ESI next argues that the superior court erred by invalidating only parts of Rule 194 rather than the entire rule because the retained portions of the rule relied on the invalidated portions.[4] ESI contends that because the entire rule is invalid, ESI is entitled to a tax refund. However, ESI's argument is misplaced because ESI would not be entitled to relief even if Rule 194 (2006) is invalid in its entirety.

ESI argued below that Rule 194 (2006) is invalid because it exceeded the statutory authority of the Department and was arbitrary and capricious. ESI argued that as a result, it should be subject to the pre-2006 Rule 194 standard that the B&O tax did not apply to taxpayers who did not maintain a place of business in Washington and were not domiciled in this state. The superior court agreed with ESI and ruled that ESI would be immune from the B&O tax if it could show that it did not have any physical presence in Washington during the audit period.[5]

Regardless of whether Rule 194 (2006) is invalid in its entirety, ESI is nonetheless not entitled to tax relief as a result. Rule 194 does not *impose* the B&O tax. Rather, ESI is subject to the B&O tax on an apportioned share of its PBM service income under the controlling statutes: RCW 82.04.220, which imposes the B&O tax; RCW 82.04.290(2), which establishes the tax rate

---

[4] In its reply brief, ESI argues for the first time that the superior court does not have authority to invalidate agency rules only in part and that RCW 34.05.570(2)(c) only authorizes the superior court to invalidate rules in their entirety. Generally, we will not consider arguments raised for the first time in a reply brief, and do not do so here. RAP 10.3(c).

[5] The Department contends that the superior court's decision was erroneous but does not cross-appeal the superior court's order. Because the Department does not cross-appeal, we do not revisit whether the 2006 amendment exceeded statutory authority or was arbitrary and capricious as it pertains to the statutory "physical presence" requirement of the pre-2010 version of RCW 82.04.220.

under the service and other tax classification; and RCW 82.04.460(1), which permits the apportionment of service income. Whether Rule 194 (2006) is invalid has no bearing on the validity of the controlling statutes, and ESI remains subject to the B&O tax as set forth in the applicable statutes.

Consequently, we hold that ESI's argument that it is entitled to tax relief because the superior court should have invalidated Rule 194 (2006) in its entirety fails.

IV. APPORTIONMENT

ESI next argues that it properly apportioned zero gross income to Washington for periods prior to June 1, 2010. We disagree.

For the relevant period, the apportionment of gross revenues for service businesses was governed by former RCW 82.04.460(1) (2004), which states:

> Where such apportionment cannot be accurately made by separate accounting methods, the taxpayer shall apportion to this state that proportion of the taxpayer's total income which the cost of doing business within the state bears to the total cost of doing business both within and without the state.

A company challenging the Department's apportionment computation must show that the computation was "unreasonable, excessive, or . . . arbitrarily and capriciously achieved." *Smith v. State*, 64 Wn.2d 323, 339, 391 P.2d 718 (1964). Here, ESI points to no evidence in the record to support its assertion that the proper apportionment is zero. Thus, we uphold the Department's computation of ESI's apportionment.

V. Taxpayer Rights

ESI next argues that it is entitled to a waiver of interest, penalties, and tax assessment[6] under the Washington Taxpayer's Rights and Responsibilities Act, RCW 82.32A.020(2), because it relied upon instructions in a prior audit report. The Department responds that ESI is not entitled to relief under the Act because ESI provided no evidence supporting its contention that it reasonably relied on the prior audit. We agree with the Department.

The Act provides that taxpayers have

[t]he right to rely on specific, official written advice and written tax reporting instructions from the department of revenue to that taxpayer, and to have interest, penalties, and in some instances, tax deficiency assessments waived where the taxpayer has so relied to their proven detriment.

RCW 82.32A.020(2).

ESI claims that in paying its taxes for the period ending in 2010, it relied on a prior audit report that instructed ESI's corporate subsidiary, ESI Mail Pharmacy, Inc., that the dispensing fee was not subject to the B&O tax pursuant to Rule 194. That prior audit report, which covered the period of January 1, 2001 through December 31, 2006, explicitly stated that the instructions contained therein "constitute 'specific written instructions' within the meaning of RCW 82.32.090." CP at 619. ESI claims that the report's reference to the dispensing fee implies that the other fees ESI receives for conducting its PBM business are also not subject to the B&O tax pursuant to Rule 194.

The Department correctly asserts that ESI offered no evidence that it actually relied on the audit's instruction when paying its taxes for the 2007-2010 reporting period and that, in fact, the

---

[6] For the period January 1, 2007 through May 31, 2010.

evidence in the record undercuts ESI's reliance claim for five reasons. First, the prior audit did not involve ESI's PBM activities, but rather involved the activities of ESI's subsidiary corporation that made retail sales of prescription drugs. Second, the prior audit was a partial audit, limited in scope to the 2003-2006 period. Third, there was no implication in the prior audit that ESI's PBM activities were not subject to the B&O tax. Rather, the audit simply stated that the dispensing fee would not be taxed because ESI had no physical presence in Washington. Fourth, the prior audit instructions were issued in December 2007, but ESI did not file B&O tax returns from January through November 2007. Finally, ESI's tax director, who was involved in providing accounting records to the Department during the 2007-2010 audit, testified that he did not review the prior audit instructions until 2011 or 2012 and could not explain whether or how ESI relied on that report for the 2007-2010 audit at all.[7]

Furthermore, the basis for the prior audit report's statement that the dispensing fee would not be subject to the B&O tax was that the Department had concluded in that audit that ESI did not have a physical presence in the state. But the 2006 amendment to Rule 194 changed the Department's interpretation of what constituted sufficient physical presence to warrant imposition of the B&O tax for the 2007-2010 audit period. Although the superior court ultimately found the amendment was inconsistent with RCW 82.04.220, ESI was nevertheless on notice during the

---

[7] In its reply brief, ESI counters that whether or not it actually relied on the prior report is a factual dispute, in which case remand for an evidentiary hearing would be required. But the proper time to assert the existence of material facts in dispute was at the summary judgment stage, not for the first time in a reply brief on appeal. This appeal does not involve a dispute over the facts in the record, but rather a total lack of evidentiary support in the record for ESI's claim of reliance. Indeed, ESI begins its opening brief with the statement, "The underlying facts in this appeal are generally not disputed." Br. of Appellant at 1. We reject ESI's argument.

2007-2010 period that the Department's standards had been amended, and thus that its B&O tax liability may have been affected. Either ESI was not relying on that statement from the 2006 report, or its reliance was unreasonable in light of the 2006 amendment to Rule 194.

For these reasons, we hold that ESI is not entitled to a waiver under the Taxpayer's Rights and Responsibilities Act.

## VI. EQUITABLE ESTOPPEL

Finally, ESI argues that it is entitled to relief under common law equitable estoppel due to ESI's reliance on the prior audit. We disagree.

A party asserting equitable estoppel against the government must satisfy five elements: (1) an admission, statement, or act inconsistent with the claim later asserted; (2) action by the other party in reasonable reliance on such admission, statement, or act; (3) injury to such other party resulting from permitting the first party to contradict or repudiate the admission, statement, or act; (4) the application of equitable estoppel is necessary to prevent a manifest injustice; and (5) the application of equitable estoppel would not impair the exercise of governmental functions. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993).

"Equitable estoppel against the government is not favored." *Kramarevcky*, 122 Wn.2d at 743. Courts should be especially reluctant to find the government equitably estopped when public revenues are involved. *Kramarevcky*, 122 Wn.2d at 744. A party asserting equitable estoppel against the government must prove each element of estoppel with clear, cogent, and convincing evidence. *Kramarevcky*, 122 Wn.2d at 744. "Under this burden of proof, the trier of fact must be convinced the fact in issue is 'highly probable.'" *Kramarevcky*, 122 Wn.2d at 744 (quoting *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 735, 853 P.2d 913 (1993)).

ESI claims it meets the elements of estoppel because:

(1) The prior audit report, stating that ESI was not subject to tax on its PBM income is inconsistent with [the Department]'s later claim that such income was taxable;

(2) ESI did not file B&O tax returns or pay taxes based upon the statements in the prior audit report;

(3) ESI was injured in the form of an assessment in the paid amount of $14 million where it could have modified its contracts or otherwise changed its business practices (including no longer providing PBM services to Washington clients) as a result of [the Department]'s repudiation of the prior audit report;

(4) It would be manifestly unjust to permit [the Department] to retain this overpayment; and

(5) Government functions would not be impaired by the application of equitable estoppel. The State of Washington operates under a nearly $80 billion biennial budget . . . . By comparison, the potential refund of something less than $14 million is a proverbial drop in the state budget bucket.

Br. of Appellant at 49.

We hold that ESI fails to prove each element of estoppel with clear, cogent, and convincing evidence. As discussed above, there is no evidence that ESI actually relied on the prior audit report during the 2007-2010 period. Even if there was actual reliance, such reliance was likely unreasonable in light of the 2006 amendment to Rule 194.

Furthermore, although ESI may be able to show injury by virtue of the assessed tax penalty, ESI offers nothing more than speculation and conclusory statements in support of the remaining elements. This falls well short of meeting ESI's burden to prove equitable estoppel, particularly in light of our reluctance to find the government equitably estopped when public revenues are involved, as they are here. *Kramarevcky*, 122 Wn.2d at 744.

We reject ESI's claim for equitable estoppel.

CONCLUSION

In conclusion, we hold that the portion of payments ESI receives from its clients representing the value of the prescription drugs does not qualify as "pass-through" funds and is subject to the B&O tax. We also hold that the Department correctly imposed the B&O tax on ESI as a service provider, and ESI remains subject to the B&O tax regardless of whether the 2006 version of Rule 194 was invalid in its entirety. We further hold that the Department's apportionment computation was not unreasonable, excessive, or arbitrarily and capriciously achieved, and ESI is not entitled to relief from the B&O tax, interest, and penalties under either the Taxpayer's Rights and Responsibilities Act or common law equitable estoppel. Accordingly, we affirm.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.

20