Sutton, J.
*168 ¶1 Express Scripts Inc. (ESI), a pharmacy benefit management company (PBM), appeals the superior court's order granting summary judgment in favor of the Department of Revenue. ESI argues that it should not be subject to Washington's business and occupation (B&O) tax[1] for payments it receives *748 from clients for the value of prescription drugs because that value qualifies as "pass-through" funds. In the published portion of this opinion, we hold that the portion of payments ESI receives from its clients representing the value of the prescription drugs does not qualify as "pass-through" funds and is subject to the B&O tax.
¶2 In the unpublished portion of this opinion, we reject ESI's remaining arguments. Accordingly, we affirm.
*169 FACTS
I. EXPRESS SCRIPTS
¶3 ESI is a PBM company headquartered in Missouri. ESI's clients include health maintenance organizations, health insurers, third-party administrators, employers, union-sponsored benefit plans, and government health programs. These clients hire ESI, in relevant part, to manage the clients' prescription drug benefit programs. ESI's services include pharmacy network management, claims processing, mail order and specialty mail order pharmaceuticals through ESI affiliates, formulary development, and rebate management.
¶4 ESI negotiates with pharmaceutical manufacturers to obtain rebates and other payments to ESI based on utilization of the pharmaceutical manufacturers' products by ESI's clients' members. Those rebates and fees are negotiated and set forth in contracts independently negotiated and entered into between ESI and the pharmaceutical manufacturers. Pursuant to separate contracts between ESI and its clients, ESI generally pays a portion of the rebates it receives to the clients, and may also guarantee a minimum rebate per prescription dispensed to the clients' members. The rebate portion that the clients receive varies according to each client's contract with ESI.
¶5 ESI contracts with independent third-party retail pharmacies to provide prescription drugs to ESI's clients' members. ESI negotiates with the pharmacies to determine the price at which the pharmacies will provide prescription drugs to the members. When a member presents his or her identification card at a network pharmacy, the network pharmacist sends the specified member and prescription information through ESI's systems which process the claim and respond back to the pharmacy. ESI confirms the member's eligibility for benefits and the conditions or *170 limitations of coverage. If a member's claim is accepted, ESI confirms to the pharmacy that it will receive payment for the drug dispensed according to the agreement entered into between ESI and the pharmacy.
¶6 Periodically, ESI invoices its clients. These invoices include amounts related to the prescription drugs provided by the pharmacies to the clients' members, and administrative and dispensing fees due under the clients' contracts with ESI.
II. DEPARTMENT'S AUDITS OF ESI
¶7 In 2007, the Department audited ESI's corporate subsidiary ESI Mail Pharmacy, Inc. for the period of January 2001 through December 2006. The resulting audit report stated:
Express Scripts also receives a dispensing fee for the costs of providing the pharmacy benefit service. WAC 458-20-194 explains the application of various business and occupation taxes to persons doing business inside and outside of Washington State. Tax is not due upon any part of the gross income received for services incidentally rendered to persons in Washington by a person who is not domiciled or does not maintain a place of business in Washington. Because Express Scripts does not have physical presence in the state and all of the activities associated with this fee occur outside of Washington, none of this fee would be subject to the B&O tax.
Clerk's Papers (CP) at 619-20.
¶8 Several years later, in 2011, the Department audited ESI for the tax period of January 1, 2007 through December 31, 2010. As a result of the audit, the Department issued a tax assessment of $ 11,794,092.00 plus interest and penalties for a total obligation of $ 14,190,659.00.
¶9 ESI paid the assessed amount and sued for a refund under RCW 82.32.180. ESI also sought to invalidate a Department administrative rule, former WAC 458-20-194 (2006)
*749 (Rule 194 *171 (2006) ) under the Administrative Procedure Act (APA).[2] The superior court addressed ESI's claims in two phases: a rule challenge under the APA and a tax refund action under RCW 82.32.180. See CP at 303.
III. PROCEDURAL FACTS
¶10 On January 23, 2017, the Department moved for summary judgment of all of ESI's claims. Two days later, the Department moved for partial summary judgment on the issue of whether ESI had a physical presence in Washington during the audit period, such that it was subject to the B&O tax. The superior court granted the Department's motion for partial summary judgment on the issue of physical presence on March 10.
¶11 On March 24, the superior court entered an order granting the Department's motion for summary judgment on all remaining issues except "the 'pass-through' issue." CP at 949. The superior court ruled that it would take the pass-through issue under advisement and consider additional briefing on the issue. After reviewing supplemental briefing from both parties, the superior court entered an order granting the Department's motion for summary judgment in its entirety on April 14, 2017.
¶12 ESI appeals.
ANALYSIS
I. "PASS-THROUGH" FUNDS
¶13 ESI argues that the superior court erred by granting the Department's motion for summary judgment because payments from its clients for the value of the prescription drugs, or "ingredients," should be exempted from the B&O tax assessment because those amounts are merely "pass-through" funds moving from its clients, through ESI, to the *172 pharmacies. Br. of Appellant 25-26. The Department disagrees and argues that because ESI takes on the obligation to pay retail pharmacies for the prescription drugs as part of its business model, and ESI independently negotiates payment of and recuperation for the value of the prescription drugs with both the retail pharmacies and ESI's clients, it is subject to the B&O tax on the money it receives from its clients. We agree with the Department.
¶14 We review summary judgment orders de novo, performing the same inquiry as the superior court. Washington Imaging Servs., LLC v. Dep't of Revenue , 171 Wash.2d 548, 555, 252 P.3d 885 (2011). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
¶15 B&O taxes are assessed on every person "for the act or privilege of engaging in business activities." RCW 82.04.220(1). The tax is assessed on the "gross income of the business," which is defined as "the value proceeding or accruing by reason of the transaction of the business engaged in" without deductions for business expenses. RCW 82.04.080. Gross income includes "compensation for the rendition of services." RCW 82.04.080. "Value proceeding or accruing" is consideration "actually received or accrued." RCW 82.04.090. In a tax refund action, the taxpayer seeking the refund has the burden of establishing that the Department incorrectly assessed the tax and that the taxpayer is entitled to a refund. RCW 82.32.180.
¶16 The B&O tax does not apply to amounts that "merely 'pass through' a business in its capacity as an agent." Washington Imaging , 171 Wash.2d at 560, 252 P.3d 885 (quoting City of Tacoma v. William Rogers Co. , 148 Wash.2d 169, 175, 60 P.3d 79 (2002) ). Generally, the only way funds qualify for "pass-through" treatment is under WAC 458-22-111 (Rule 111). Washington Imaging , 171 Wash.2d at 559, 252 P.3d 885. "Rule 111 excludes from the definition of 'gross income' certain 'advances' and 'reimbursements' for which the taxpayer assumes solely agent *173 liability." Rho Co., v. Dep't of Revenue , 113 Wash.2d 561, 567, 782 P.2d 986 (1989). B&O tax jurisprudence has routinely required evidence of an agency relationship in order to consider funds as "pass-through" payments. See, e.g., *750 Walthew, Warner, Keefe, Arron, Costello & Thompson v. Dep't of Revenue , 103 Wash.2d 183, 189, 691 P.2d 559 (1984) (compensation qualified as "pass-through funds" where law firm was "acting solely as agent for the client in advancing the type of litigation expense involved here").
¶17 Despite arguing that the payments ESI receives from its clients for the value of the prescription drugs qualify as "pass-through" payments, ESI does not contend that Rule 111 applies. Indeed, ESI acknowledges that no agency relationship exists between ESI and its clients. Instead, ESI argues that First American Title Ins. Co. v. Dep't of Revenue , 144 Wash.2d 300, 27 P.3d 604 (2001) created an alternative basis to achieve "pass-through" status. However, ESI ascribes undue weight to the First American court's use of the term "pass-through."
¶18 First American involved a title insurance company that operated with several underwritten title companies (UTCs) to provide a bundle of services to consumers. First American , 144 Wash.2d at 301-02, 27 P.3d 604. The bundled services included title insurance provided by First American and title abstracting services provided by the UTCs. First American , 144 Wash.2d at 302, 27 P.3d 604. Our Supreme Court's decision in First American relied heavily on the unique nature of the business of UTCs and title insurance companies. See First American , 144 Wash.2d at 304-05, 27 P.3d 604. The court did not mention "pass-through funds" until the very end of its opinion when it concluded "the UTCs merely act as a pass-through entity for the proportional value of the product contributed by the insurer, i.e., 10 percent of the gross proceeds from sale, which is the value of the insurance policy." First American , 144 Wash.2d at 305-06, 27 P.3d 604. The court did not explain what "pass-through funds" meant or outline any standards to be applied in future cases. We hold that the First American *174 court's use of the term "pass-through funds" was dicta and did not create an alternative means of achieving pass-through status for B&O tax purposes. Thus, we analyze ESI's pass-through argument under Rule 111.
¶19 ESI's PBM services include managing all of its clients' drug benefit programs, including the obligation to pay retail pharmacies for drugs dispensed to plan members. Pursuant to its contracts with retail pharmacies, ESI is solely responsible for payment to the pharmacies for the drugs dispensed to plan members and assumes the credit risk of ESI's clients' ability to pay for the drugs. ESI negotiates the payment it receives from its clients for the value of the prescription drugs and separately negotiates how much it will pay retail pharmacies to settle its obligation to them. As such, ESI does not act as a mere pass-through agent for its clients. Rather, the compensation ESI receives from its clients for the value of the prescription drugs is an integral part of ESI's business model for its PBM services.
¶20 ESI analogizes its business to that of credit card processors, who "are not subject to B&O tax on amounts passed through to merchants." Br. of Appellant 27. But ESI and other PBM companies differ from credit card processors because credit card processors are not parties to the contractual agreement between bank, cardholder, and merchant, whereas PBM companies independently negotiate prices with both clients and pharmacies.
¶21 Credit card processors' activities are limited to processing the credit card payment, for which it receives gross income in the form of a merchant discount fee. See , Br. of Appellant, App. A, (Excise Tax Advisory 3204.2017). The funds forwarded by the issuing bank to the merchant in settlement of the cardholder's debt obligation are unrelated to the credit card processor's business activity.
¶22 In contrast, the portion of ESI's payment from its clients representing the value of the prescription drugs is *175 part and parcel of the amount ESI contracted to receive in compensation for its PBM services. Under its contracts, ESI assumes the obligation to pay retail pharmacies for the prescription drugs dispensed to its clients' members, and ESI retains the right to realize a profit on the difference between the amount it pays pharmacies and the amount it charges clients for its services. The relationship between pharmacies, ESI, and ESI's clients is significantly different from the relationship between issuing banks, credit card processors, and merchants. Thus, ESI's analogy fails. *751 ¶23 We hold that the portion of payments ESI receives from its clients representing the value of the prescription drugs does not qualify as "pass-through" funds and is subject to the B&O tax. Accordingly, we affirm the superior court's order granting summary judgment in favor of the Department.
¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.
We concur:
Lee, A.C.J.
Worswick, J.

Ch. 82.04 RCW.

Ch. 34.05 RCW.